MARY MARSH *vs.* GEORGE POTTER and Mary his wife.

Under the code, husband and wife are competent witnesses in their own be-
half, when co-plaintiffs or co-defendants; and in like cases they are also
competent witnesses for each other. ROSEKRANS, J., dissented.

In actions between one of them and a third person, the one is not a competent
witness for or against the other.

The former law is untouched by the code, as respects confidential communi-
cations or matters between them.

THIS was an action of slander, against husband and wife,
for words uttered by the wife. On the trial the husband
was offered as a witness generally in the cause, and in his own
behalf. The plaintiff objected to his being sworn: 1st. On
the ground that, being the husband of his co-defendant, he
was not competent; and that the husband and wife could not
be sworn and examined as witnesses for or against each other,
in this action. 2d. On the ground that this was a joint ac-
tion, in which no separate judgment could be rendered against
either. The court sustained the objection, and held, that be-
ing the husband of his co-defendant, he was not competent as
a witness in the action. The wife was then offered as a wit-
ness, for the same purpose, and in the same manner. The
plaintiff interposed the same objections, which were, for the
same reasons, sustained by the court. To which rulings the
defendants duly excepted. The plaintiff had a verdict.

*A. McFarlan,* for the plaintiff.

*McIntyre Frazer,* for the defendants.

JAMES, J. As this action was for the tort of the wife, not
committed in the presence of the husband, the two were ne-
cessarily made parties to the suit. (2 *Kent's Com.* 149.) If
the plaintiff obtains judgment, execution may issue against
both defendants, as both are judgment debtors, (*Code,* §§ 283,
286, 289,) and it may be satisfied out of the property of the
husband, or the separate property of the wife. (*Code,* 289.

*Hood* v. *Mathews*, 2 *Dowl. P. C.* 149. 1 *Tidd's Pr.* 194, *9th ed.*) If returned unsatisfied, both, or either, may be taken in execution against the body. (*Code*, §§ 288, 179. *Pitt* v. *Meller*, 2 *Strange*, 1167. *Finch* v. *Duddin, Id.* 1237. *Langstaff* v. *Rain*, 1 *Will.* 149. *Anonymous*, 3 *id.* 124. *Newton* v. *Brodle*, 9 *Adol. & Ellis*, 948.)

The main question presented by the case is, whether, when husband and wife are parties defendants, they are competent witnesses in the cause, in their own behalf, or for each other.

The question, however, may be discussed in its broad sense as one of general evidence—whether married persons, when properly parties to actions, are competent witnesses? The *letter* of the statute extends to married persons, whether they be co-plaintiffs, co-defendants, or the action be between themselves.

Upon the competency of witnesses the common law proceeded in distrust of human nature ; it believed a witness, if interested, to be incapable of verity, (1 *Phil. Ev.* 46 ;) and there consequently grew up under it a system of restrictions which rarely, if ever, allowed the facts in a given case to come out fully, and was often the occasion of great hardship and injustice. The objections to such a system were too manifest to escape attention. Many thought the attainment of truth would be best promoted by opening every source of information in a given case, and that all persons cognizant of any facts bearing upon the case, and especially those ordinarily most conversant with them, the parties themselves, should be permitted to speak. They expressed confidence in man, and a belief in the existence of human integrity. They believed in the capacity of human nature, although interested, to speak the truth, and in the ability of triers of questions of fact to detect falsehood.

From such a basis of thought there have sprung up, within a few years past, in England, and in some of the states of this country, radical changes in the admissibility and competency of persons as witnesses. A new system has developed itself,

whose foundations are laid in common sense and an enlight-
ened policy; and its superiority over the old is no longer
questioned, except by the few who have no confidence in the
present, no hope in the future, and who deem our only safety
is in keeping fast anchored to the past.

In those countries which have introduced the new system,
the courts have usually most heartily co-operated in the move-
ment.   In England, Lord Denman, Lord Brougham and Lord
Campbell, while on the bench, introduced into parliament the
several acts which have wrought such radical changes in the
law of evidence, that scarcely a vestige of the common law, in
regard to competency, remains.   Shall our courts hesitate to
follow such eminent jurists, or refuse to give to the enlight-
ened legislation of this state that liberal construction which
will lead to a similar result?

Actions between married persons should constitute no ex-
ception to the general rule of practice.   Such suits represent
well defined rights of action, both as concerns property and
personal rights.   Suitors can institute them, courts must en-
tertain them, and triers must decide them.   So in actions
where husband and wife are co-plaintiffs or co-defendants,
husband and wife may sue and can be sued; and the husband
*must* in some instances be sued with the wife.   Such actions
must be entertained and tried by the courts.   The simple
question then is, *shall* such actions be tried in the ordinary
way, or by some exceptional method?   Will the law, while
it entertains them, say that they shall be decided rightly, so
far as practicable, or that it is a matter of no consequence how
they are disposed of?   Or if their decision is a matter of some
concern to the law, shall the means most approved for arriv-
ing at a result consonant with the dignity of the law and the
rights of individuals in other cases, be employed in these
actions?   Or shall the triers be left to grope their way
through a partial darkness to a conclusion?   In other words,
shall the husband's mouth be closed in his own behalf, when

Marsh *v.* Potter.

his wife is a co-party, although permitted to speak, if sued alone ?

It is a rule of the common law that husband and wife cannot be witnesses for or against each other. The first branch is based entirely upon *interest;* the second upon *interest and public policy.* All persons *interested* in the action were, at common law, held incompetent to testify therein. This, of course, excluded the parties to the record. At common law the wife's civil existence was merged in that of her husband, and the two were regarded as but one person; she had no separate right of property or of action; and hence was excluded from being a witness in her husband's *behalf.* This identity of interest was also the real support of the rule excluding the wife as a witness against the husband. " In consequence of this identity of *interest,* husband and wife uniformly appeared before the court in a friendly attitude. Legally, their relation was one of mutual confidence and harmony. There was every reason to fear, therefore, that in the event of the introduction of one of them at the suit of an adversary of the other, some testimony would be elicited which would be detrimental to the interest of the other, and therefrom domestic ill feeling and discord result." The peace of families would thus be jeopardized, merely to subserve the pecuniary interests of third persons.

That this is the true rationale of the rule, every statement of its *reasons* which can be found in the books will show.

Baron *Gilbert,* in his work on *Evidence, (page* 252,) says : " If they (husband and wife) swear *for* each other, they are not believed, because their interests are absolutely the same, and, therefore, they can gain no more credit when they attest *for* each other, than when a man attests for himself. And it would be very hard if a wife should be allowed as evidence *against* her husband, when she cannot attest *for* him. Such a law would occasion implacable quarrels and divisions, and destroy the very legal policy of marriage."

*Peake*, in his work on *Evidence*, (*page* 173,) states the reasons of this rule in the same manner, substantially.

In *Taylor* on *Evidence*, (*page* 878,) it is laid down thus: "They cannot be witnesses *for* each other, because their interests are identical; neither can they testify against each other, because the admission of such testimony would lead to dissension and unhappiness, and possibly to perjury."

*Phillips* says: "The reason for excluding husband and wife from giving evidence for or against each other, is founded partly on the identity of interest, and partly on the principle of public policy, which deems it necessary to guard the security and confidence of private life even at the risk of an occasional failure of justice. They cannot be witnesses for each other, because their *interests* are absolutely the same; they are not witnesses against each other, because this is inconsistent with the relation of marriage."

*Starkie*, in his work on *Evidence*, (*vol.* 2, *p.* 706,) says of the rule, "it is founded partly on the identity of *interest* in these persons, and partly on the grounds of public policy, for fear of creating distrust and dissensions between them, occasioning perjury."

*Greenleaf* uses almost the same language, (*vol.* 1, § 334.)

The rule is laid down in *Butler's Nisi Prius*, (*page* 286,) thus: "Husband and wife cannot be admitted to be witnesses for each other, because their *interests* are absolutely the same; nor *against* each other, because contrary to the legal policy of marriage."

In *Blackstone's Commentaries*, (*vol.* 1, *p.* 443,) it is said that husband and wife "are not allowed to be evidence *for* or *against* each other, partly because it is impossible that their testimony should be indifferent, but principally because of the union of persons, and, therefore, if they were admitted to be witnesses *for* each other, they would contradict one maxim of law, 'no one should be a witness in his own cause;' and, if against each other, they would contradict another maxim, 'no one is obliged to criminate himself.'"

I think it clear, therefore, that the true principle which excluded the husband or the wife of the party from being a witness *for* or *against* each other, was the union of *interest* and *privilege* existing between them.

It is true, authorities can be cited which state that it is with a view of preserving the peace of families, and where it is said that the admission of such testimony would lead to dissension and unhappiness, and probably to perjury, and that the confidence existing between husband and wife should be sacredly cherished ; but if those cases are carefully examined it will be found that this question, in its origin and cause, was not fully considered.

As was said by Earle, J., in *Stapleton* v. *Croft*, (10 *Eng. Law and Eq. Rep.* 460,) there is no doubt that the law most carefully protects the interests connected with marriage ; and that it established the *union of interest* for the purpose of domestic *union*, and excluded the testimony of one, when the other was excluded on account of this *union;* and the expressions of authorities above cited, if confined to the exclusion of the one when the other is excluded, have a definite meaning, capable of practicable application ; but if they are carried beyond this limit, and are supposed to introduce the tendency to domestic discord as a ground of exclusion, they will be found to be contrary to the known principles of evidence, and to be incapable of being consistently applied.

If this ground of exclusion existed, it would apply to other witnesses as well as to parties ; their domestic peace being equally important.   But it is clear with respect to witnesses not parties, that they cannot refuse to be examined on any grounds derived from marriage, and that husband and wife may mutually contradict and discredit each other, upon matters full of family dissension, as freely as if there had been no marriage.   Even if it could be supposed that the law regarded only the domestic peace of families, and protected their confidence, still the supposed ground of exclusion is not consistently applied ; for if a husband is assaulted or libeled,

he may seek redress either by action or by indictment. In either form he is in substance a party. If he proceeds by action, at common law he and his wife are both incompetent; if by indictment, both are admissible, either to corroborate, contradict or discredit each other. Thus, in the case of an executor, where the action will enure to the sole profit or loss of the heirs at law, who would be, in substance, the parties, each heir may now be called as a witness for or against the executor, and compelled to testify; and the wife of each may be compelled to give evidence in the same case, although her testimony be to contradict, discredit, or even impeach that of her husband, and so of the husband against the wife. Now if the principle of excluding the wives of parties was the protection of domestic peace and confidence, the wife ought to be excluded equally in both cases; but as she was excluded only in the action, where the husband was also incompetent, it seems better reason to attribute her exclusion to the uniform principle of union, or *interest* arising from that union, than to suppose the courts would protect the domestic peace of parties, and not of witnesses, or that what was protected in the civil court would be neglected in the criminal. With respect to the protection of confidential communications between husband and wife, there is good reason for such protection at all times; but no such principle has been brought into practice. The decisions, excluding the husbands or wives of parties, are often accompanied with sacred declarations in favor of such protection; but as the exclusion extended to all the testimony, whether it was confidential or not, and as no protection was given to conjugal confidence in respect to *witnesses not parties*, who were as much within the reason of the rule, if it existed, as the other class, it may be safely affirmed that no such rule has as yet been established. As to the authorities, most of the decisions in favor of excluding the wives of parties were given in cases where the husband was excluded, and therefore no matter how strong may have been the expression of public policy, and in favor of preventing domestic discord, &c., all

Marsh *v.* Potter.

those decisions are consistent with the principle that *interest* was the ground of objection.

Of late years material changes have been made in the law of husband and wife, both in this country and England, but particularly in this state. The wife has been admitted to separate rights of property, and, as a consequence, to separate rights of action even as against the husband himself. The marriage contract has lost its ancient feature of indissolubility, and actions between parties for the breach of it are constantly before the courts. In the case of an action between these persons, whether in regard to some disputed property, or by the husband for a divorce, or by the wife for a separation, it is idle to assert that they stand before the court in that amicable attitude, in which, in civil suits, they invariably stood at common law.

Radical changes have also been effected within the last sixteen years in the law of evidence, and the competency and admissibility of witnesses. England took the initiatory step by the passage of *Lord Denman's act*, in 1843. Its general feature was that no person offered as a witness in a civil case should be excluded by reason of incapacity from crime or from interest; with a proviso that the same should not extend to the party to the record, and some others enumerated; nor the husband and wife of such persons respectively. *Lord Brougham's act* was passed in 1851. The first section repealed all the proviso of Lord Denman's act, except that relating to husband and wife. The second section made all parties to actions competent witnesses. The third section made husbands and wives of parties in criminal proceedings incompetent; and the fourth section rendered the statute inapplicable to actions founded upon adultery or a breach of promise of marriage.

The first case under this act was *Barbat* v. *Allen*, (7 *Exc. Rep.* 609,) in which the question was, whether the husband or the wife of a party to the record were competent witnesses, and it was held they were not. The case of *Stapleton* v.

*Crofts,* (10 *Eng. Law and Eq. Rep.* 455,) in the queen's bench, followed, in which the same question was presented, with the same ruling. There are many expressions, however, in the latter case, indicating that both court and counsel regarded married persons, *when parties to the record,* as within the statute.

The case of *Alcock* v. *Alcock,* (12 *Eng. Law and Eq. Rep.* 354,) before Vice Chancellor Parker, was an action by the wife against the husband, concerning her separate estate, in which it was held that the parties were inadmissible as witnesses, and the reasoning was, that before the statute there would have been two objections to their competency, viz. one that they were parties; the other, that from reasons of public policy they were inadmissible against each other; that the first of these objections had been removed by the statute, but the latter was untouched by it. This *reasoning* is not sound. It *assumes* that the second objection exists in such a case, which is not so. At common law the wife had no separate estate, and hence no such relative position of the parties could concur in a civil suit at common law; and when they stand before the court in a different attitude, the reason of the common law rule of evidence fails.

The next case was *McNeillie* v. *Acton,* (21 *Eng. Law and Eq. Rep.* 3,) also in chancery, in which married persons, co-defendants, were held inadmissable for each other. In making this ruling, Vice Chancellor Stuart expressly stated that he followed *Alcock* v. *Alcock* (*supra*) simply as authority; his own opinion being the other way. In *Stakehill and wife* v. *Pettingill,* in the queen's bench, where husband and wife sued for an injury done to the wife, it was held by all the court that the wife was a competent witness to prove the plaintiff's case. This case is found in a note, 10 *Eng. Law and Eq. R.* 458, and was probably not reported in the regular series, in consequence of *Lord Campbell's act* in 1853, which covered the whole disputed ground, and made husband and wife witnesses for and against each other, except in criminal proceed-

ings and cases of adultery; but prohibiting the disclosure of confidential communications made to them during marriage. Lord Brougham's act was very similar to our present code; and the decisions under it, it will be perceived, are very strongly in favor of the competency of husbands and wives, *who are parties*, as witnesses.

In Connecticut, a statute was passed in 1848 to the effect that no person should be disqualified as a witness, by reason of his interest as a party or otherwise. In 1849 a limitation was introduced in the case of criminal proceedings. Under these statutes it was held, in *Merriam* v. *Hartford and New Haven Rail Road Co.*, (20 *Conn. Rep.* 354,) that married persons were admissible for each other, and in *Lucas* v. *The State*, (23 *id.* 18,) it was in substance said by Church, Ch. J. that in all civil actions married persons were competent to testify for each other.

In Vermont, a statute precisely similar to the Connecticut statute of 1848 was passed in 1852; after which it was held in *Manchester* v. *Manchester*, (24 *Verm. Rep.* 649,) that in a petition of divorce the parties were not competent witnesses in their own behalf; but Redfield, Ch. J. said, "If the statute provided in terms that all parties should be witnesses, no doubt the parties to this proceeding would be thereby rendered competent. But the statute is not so broad. It only provides that no one shall be disqualified as a witness by reason of being a party. These disqualifications, but no other, are removed by this act." This case, although it proceeds upon a narrower construction of the statute than the Connecticut cases, is enough. The doctrine is to the effect that, under a statute like that in this state, the parties would have been admissible.

In 1856 Massachusetts enacted that the parties in all civil actions might be admissible to testify in their own favor, and might be called as witnesses on the opposite side. Under this statute in *Barber* v. *Goddard*, not yet reported, but an abstract of which may be found in 10 *Law Rep.* 408, it was

held "that the wife was not a competent witness for her husband in any case, *unless she were a party ;*" and in *Snell* v. *The Inhabitants of Westport, (Id.* 144,) it was held that in an action by the husband and wife, for an injury to the wife, she was a competent witness for the plaintiff.

It will thus be seen that the authorities in courts, other than in our own state, wherever the present question or a similar one has been presented, are, with hardly an exception, in favor of admitting husband and wife as witnesses whenever they are parties.

But the construction now contended for is not new.   More than one hundred and forty years ago some of the states of this country had statutes admitting parties as witnesses in actions arising on book account, (*see note a,* 9 *Conn. R.* 348 ;) and the construction of such statutes was that married persons, when parties, were competent as witnesses.

In Vermont, under a similar statute passed more than twenty-five years ago, it was held in *Carr* v. *Cornell,* (4 *Verm. Rep.* 116,) that the wife of a party was not a competent witness, unless a party to the record.   But in *Andrews and wife* v. *Foote,* (17 *Verm. Rep.* 556,) and *Jay and wife* v. *Royes,* (18 *id.* 342,) the wife as a co-plaintiff was received as a witness in each case, and held competent.

It must be borne in mind that this reason does not touch the competency of the wife in an action between the husband and a third person.   The code has not gone to that extent. In such cases married persons stand as they did at common law.   Neither does the reason affect another rule in the law of evidence touching husband and wife, viz. that communications between them are privileged.   That is not a rule concerning the competency of witnesses, but relates exclusively to the subject matter of their proposed evidence.   It is analogous to the rule between attorney and client.

The first changes in this state were to remove the disqualification of interest, except in the case of parties and those immediately interested, and to allow a party to be called by

an adverse party. (*Code*, 1848.) A glance at the decisions under that statute would not be inappropriate.

The first case which arose after the adoption of the code, was that of *Pillow and wife* v. *Bushnell*, (4 *How. Pr. R.* 9; 5 *Barb.* 156,) tried before Mr. Justice Cady in 1848. The action was for assault and battery upon the wife; and after the plaintiffs had rested their case, the defendant called the wife to prove his defense, and she was admitted. The defendant had a verdict, and on appeal by the plaintiff the general term held her admission to be an error. It was conceded that the letter of the statute would admit the wife, but it was held that such was not within the intention of the legislature. It is, however, worthy of note, that the learned justice who wrote the opinion, although using the phrase that "at common law husband and wife are excluded from giving evidence for or against each other;" yet, when he comes to define the rule, he recognizes the same distinction, herein insisted upon, as the true theory; that they cannot be witnesses *for* each other, because of the identity of *interest*, nor *against* each other, on a principle of public policy, &c. Therefore *Pillow* v. *Bushnell* is not a decision for this case. In that, the wife was called against the husband, and was rejected as incompetent, on the ground of public policy; while in this case, the wife was called for her husband, and also in her own behalf.

The next case was that of *Erwin* v. *Smaller*, (2 *Sand. Rep.* 340,) where the wife, *not a party*, was called as a witness against her husband, and was rejected as incompetent, on the grounds of public policy pertaining to the domestic relation.

The next case arose in 1850, and was that of *Hasbrouck* v. *Vandevoort and Hayward*, (4 *Sand.* 596; 5 *Selden*, 153.) The action was by Hasbrouck as trustee of the separate estate of Adeline Pickering, wife of Wm. L. Pickering; and on the trial the said Wm. L. was offered as a witness on behalf of the trustee, and was objected to as incompetent, and excluded. On appeal, the general term and the court of appeals affirmed the ruling. The superior court placed its decision

on the ground of public policy, and that the rule had not then been changed by the code of procedure. The court of appeals, in its decision, after citing several cases, says : "It is entirely clear that the rule of exclusion of *husband* and *wife*, when the other is a *party*, or *interested* in the event, depends merely upon the existence of the relation, and not at all upon the existence in the party offered as a witness of an interest in the event, independent of that which the law may attribute to him by reason of the marriage relation." And speaking of the code, as applicable to the case, said : "The only objection to Mrs. Pickering's competency was interest in the event; that the code has removed, and made her competent. But the statute has not removed her *interest*, and while that remains, *her husband* cannot be competent. Being incompetent at the common law as husband, and not upon the ground of interest in the event, he must remain incompetent, until some statute shall remove the ground of incompetency." Thus, in substance, holding that the exclusion of husbands or wives from being witnesses *for* each other, rested upon the union of interest arising from the marriage contract. This case does not, therefore, militate against any ground assumed in this opinion. First, because the law has been changed since its decision ; and second, because the cases were not alike in their facts. In the one case, the husband and wife were co-parties, and in the other, they were not ;' in the one case both were offered in their own behalf, and in the other not.

*Arborgast* v. *Arborgast* (8 *How. Pr. Rep.* 299) was a case at special term, where the husband had sued for divorce on the ground of adultery. The wife did not appear, and an order of reference being taken, the wife was offered as a witness to prove the adultery. The court held that the testimony of a defendant would not warrant a judgment for a divorce. This was undoubtedly correct, and all that it was necessary to decide ; but the learned justice made mention of the common law rule excluding husband and wife, and cited approvingly *Pillow* v. *Bushnell.*

Marsh v. Potter.

The case of *McGinn* v. *Worden* (3 *E. D. Smith's Rep.* 355) was where the wife was sued with the husband, and was offered as a witness, after the plaintiff had been examined as a witness in his own behalf, and was excluded. This case arose under a branch of section 399 of the code, not now under consideration, and therefore does not touch the question presented by this case. But the court in that case expressed the doubt whether the legislature had not altered the law, in such case, so as to admit both husband and wife as witnesses, with the consent of the other.

These are all the cases decided since the enactment of the code, and previous to the last amendment, which have come to my notice ; and it will be seen that none of them do or could present the precise question which arises in this case. In 1857 the legislature amended the 399th section of the code, so as to read as follows : "A party to an action may be examined in his own behalf, the same as any other witness." Since then there has been decided the case of *Macondry* v. *Wardle*, (26 *Barb.* 612,) which was an action against husband and wife to compel the application of certain property, standing in her name, to the payment of a judgment against the husband, upon the ground of fraud. On the trial the plaintiff called the wife as a witness, and on objection she was excluded. This ruling was sustained at general term, upon the ground that the wife could not have been a witness, if the action was solely against the husband, and that making her a party to the record did not remove the incompetency. That decision does not affect this case, because there the wife was called as a witness *against* the husband, which right depends not upon section 399, under which parties may offer themselves as witnesses in their own behalf, but upon sections 390, &c., and may, being *against*, be controlled by the question of public policy.

The next reported case is *Smith* v. *Smith*, (15 *How. Pr. Rep.* 165.) The facts of the case were precisely like those of *Arborgast* v. *Arborgast*, (*supra*,) and the order of the court the

same. In deciding the case, the justice said : "The language of the statute clearly embraces her ; and yet one familiar with the rules of the common law relating to husband and wife, and the reason assigned, time out of mind, for those rules, would be likely to hesitate long before coming to the conclusion that the legislature *intended* an innovation so dangerous to the peace of families, and the harmony of the domestic relations." In other words, notwithstanding the legislature had said, in plain words, that husband and wife when parties were competent as witnesses, it did not intend what it had said, and therefore it was the duty of the courts to defeat its expressed will by judicial construction. I am compelled to dissent from any such conclusion. The learned justice in that case frankly says : "But for certain decisions, I should have held that the legislature had abrogated the rule prohibiting husband and wife from being witnesses when parties." The authorities which controlled his judgment are those herein before cited, and do not, as I insist, control the present statute. The argument of "danger to the peace of families," &c., is answered by my illustration that no such consideration governs the question, as to witnesses not parties.

I have been favored with the opinion of Justice Strong, of the 7th district, in the MS. case of *Gale* v. *Gale*. That was an action for a limited divorce, and the plaintiff on the trial offered herself as a witness in her own behalf, and against her husband. She was rejected as incompetent, and on appeal the general term sustained the decision, on the ground that the amendment to the code in 1857 only removed the disqualification of being a party, and consequently all other grounds of incompetency remained. This decision can be sustained if the question of public policy is retained as a ground of exclusion, when the wife is offered as a witness against the husband, without adopting the reasoning or construction of the court, which I shall endeavor hereafter to show is unsound.

I have also met with the newspaper report of *Hulsapple and wife* v. *The Eighth Avenue Rail Road Company,* tried

at the New York circuit before Justice Hogeboom. The action was for negligence, whereby the wife was injured; on the trial she was sworn, and testified as a witness. It does not appear whether any objection was made to her examination, but as the defendants sought to contradict her evidence, the inference is that the objection was made, and she held admissible.

After a careful examination of the cases arising in this state, which have come under my observation, that have a bearing upon the question involved, I am of the opinion that the precise question presented by this case upon the law, as it now stands, is not *res judicata,* but open.

When rules once become fixed in the human mind, it is hard to eradicate them and substitute others in their place. The rule of the common law, of the inadmissibility of the husband and wife as witnesses, in actions where one is a party, or where both are parties, had so long existed—had become so thoroughly interwoven into our legal system—that it seems almost impossible for the legal profession to admit the possibility of change. After the passage of the law removing the disqualification of *interest,* the courts were reluctant to obey the statute, and the books are full of learned and able opinions, showing how "not to do it."

In two cases cited, *Pillow* v. *Bushnell* and *Smith* v. *Smith,* the court conceded the letter of the statute, but held that it was not within the *intention* of the legislature. At the time of the decision of *Pillow* v. *Bushnell,* the only legislation on the subject was that of Lord Denman's act, in England, which, as we have seen, expressly excluded parties, and husbands and wives, and that in this state, admitting interested witnesses and the adverse party, but expressly excluding parties to the action, and those for whose immediate benefit the action was prosecuted or defended. It is not surprising, therefore, that in such a state of the question, the courts should hesitate. But the same reason, applied to the recent changes, leads now to the opposite conclusion. Intermediate the acts

of 1848 and 1857, the statutes in England, Connecticut, Massachusetts and Vermont, herein named, and the cases herein cited, have occurred; and the general and comprehensive amendment to the code, now under consideration, was enacted with the light and spirit of those acts as guides, and must have been intended to include all persons, no matter what their relation to each other.

The amendment of 1857 does more than simply remove the objection of being a party. It affirmatively and positively makes *parties competent witnesses,* so far as any objections based upon their relation to the action are concerned. It says : "A party to an action or proceeding may be examined as a witness in his own behalf, the same as any other witness." The first clause is the same as the modern English and Massachusetts statute, and the old statutes of Connecticut and Vermont, relating to book debt. It puts the parties, as witnesses, upon the same footing as other witnesses in the suit, and intending clearly that all other objections which could not be taken in that suit against *other witnesses* are removed. To illustrate : A general objection is bad character, conviction of crimes, &c. These, in all suits, incapacitated persons as witnesses. The witness' relation to the suit, or to the parties, had nothing to do with the objection. Such objections still affect parties. But the objection that the person offered as a witness was interested, or was a party, or the husband or the wife of a party, were special objections, or peculiar to the suit in which the objection was raised. Now a statute admitting parties, and making them obnoxious only to such objections as might be made to witnesses generally in the action, necessarily abrogates an objection which cannot be taken to any other witness in the action, and which is not general in its nature, but depends entirely upon the relation of a party offered as a witness, to the action, or to the other parties to it.

The second clause of the enactment, "the same as any other witness," should be allowed to have some force, and should

Marsh *v.* Potter.

be applied precisely as it reads : "A party, &c. may, &c., the same as any other witness," that is, subject to the same restrictions, or objections, that might or could be taken to any other witness. The statute is not that a party may be examined, &c., the same as if he were a witness in the action. The statute not only makes parties witnesses, but puts them upon the same footing as other witnesses, subject to the same objections as other witnesses, and none other.

But in this case the defendants were offered as witnesses in their own behalf, as well as for each other. If the reason of the common law rule for excluding husband or wife from being a witness for the other was based solely upon the union of interest created by the marital relation, that disqualification having been removed, as well as that of parties to the record, the defendants in this case were admissible as witnesses *for* each other. But whether the common law rule rested alone upon the ground of interest or not, being parties to the record, and necessarily so, they are most certainly competent as witnesses in their own behalf. Such is the letter and spirit of the enactment. "A party to an action, or proceeding, may be examined as a witness in his own behalf, the same as any other witness." Here no limitation, qualification, or restriction, is imposed by the law-making power. What right, then, has the court to fritter away by judicial construction the plain letter of the statute, to make an exceptional case, where one party shall be deprived of the benefit of his own testimony, while his opponent is permitted to testify ? Clearly none.

I have before said that this question should be discussed as a general question of evidence, and decided on principle—upon a rule that will work in all cases alike. If the legislature, when it made parties witnesses, had intended any exception to the general rule, it would have said so in the act ; not having said so, the legal inference is that none was intended.

I am therefore of the opinion that under the code, as it now reads, husband and wife are competent witnesses in their own behalf, when co-plaintiffs or co-defendants ; and in like cases

also competent witnesses for each other; that in actions between one of them and a third person, the one is not a competent witness for or against the other; and that the law is untouched by the code as to confidential communications or matters between them.

There should be a new trial, costs to abide the event.

POTTER, J., concurred.

ROSEKRANS, J., dissented. ·

New trial granted.

[SCHENECTADY GENERAL TERM, January 3, 1860. *James, Rosekrans* and *Potter*, Justices.]