JAMES HOOPER *vs.* DANIEL HOOPER and ELLEN his wife.

When husband and wife are parties defendant in an action for a personal tort committed by the wife alone, she is competent to give evidence as a witness, in her own behalf.

A married woman, made a party to an action in connection with her husband, is within the spirit and reason as well as within the letter of section 399 of the code of procedure, as amended in 1857, which declares that "a party to an action or proceeding may be examined as a witness in his own behalf, the same as any other witness," &c.

The decision in *Marsh* v. *Potter* (30 *Barb.* 506) approved.

CASE heard upon exceptions taken at the trial and ordered to be heard, in the first instance, at the general term.

*Bernard Hughes,* for the plaintiff.

*J. W. Gilbert,* for the defendants.

*By the Court,* BROWN, J. This is an action tried before Mr. Justice LOTT, for an assault and battery committed by the defendant Ellen Hooper upon the plaintiff. In the progress of the trial the defendants offered Ellen, the defendant, as a witness in her own behalf. She was objected to as incompetent, by the counsel for the plaintiff. The court

Hooper *v.* Hooper.

sustained the objection and excluded the witness, and the defendants excepted. The plaintiff obtained a verdict for $1250, and the judge ordered the exceptions to be first heard at the general term. Other exceptions were taken by the defendants' counsel during the trial, but I shall only consider that which relates to the admissibility of the wife to give evidence in her own behalf where she and her husband are parties defendant in an action for a personal tort committed by her alone.

The cause of action does not proceed from the husband alone, or from the husband and wife jointly, but from the wife exclusively. He is sued and made a party defendant in consequence of the marital relation, and in virtue of a rule of the common law that the wife could not be sued alone. Her coverture was always a good plea in abatement of the action, and she was not estopped or precluded by any acts or declarations of her own from availing herself of her coverture as a defense to an action when she was sued alone. In this action, therefore, she is the principal defendant. The proof must establish a separate cause of action against her, or the plaintiff can not recover judgment, and when that is established he is entitled to judgment against the husband as well as against the wife, upon the sole ground that he is her husband and she is not responsible in the action, alone. The action, therefore, is substantially an action against her; the judgment when recovered will be against her as well as her husband, and the execution will issue against both, and may be satisfied out of the property of both or either. The question is whether she is not entitled to the benefit of the modification of the law of evidence which allows parties to become witnesses in their own behalf. Much, very much, has already been written and said upon this subject. I shall not enlarge upon it, nor stop to examine the various adjudications, for I feel myself unable to add much, if any thing, to the force of the argument already rendered. Nothing short of an adjudication of the court of last resort will remove the ques-

tion from the field of litigation; and a few propositions will be all that I can profitably say concerning it.

At the common law husband and wife were excluded from giving evidence in each other's favor, upon two grounds: first, the general ground of interest; it being a universal rule to exclude all who had any interest in the subject of the litigation; and second, upon the ground of policy and the necessity of preserving unimpaired the confidence of the conjugal relation. Section 398 of the code of 1849 abrogated the ground of interest, declaring that no person offered as a witness shall be excluded by reason of his interest in the event of the action. This provision was qualified by those contained in section 399. But as a general rule interest, without something more in addition, ceased to be a ground of exclusion. In the case of husband or wife offered as a witness for each other, the ground of policy and the relation between the witness and the party to the action, plaintiff or defendant, still remained, and they were still incompetent to give evidence in favor of each other. To this effect is the case of *Hasbrouck* v. *Vandervoort and Hayward*, (5 *Seld.* 153.) Then came the act of the 13th April, 1857, amending section 399 of the code, by declaring that "a party to an action or proceeding may be examined as a witness in his own behalf, the same as any other witness," &c. The case of a married woman sued for a tort is certainly within the letter of this amendment. Whether she is sued alone or in connection with her husband, makes no difference; she is still a party—and as I have shown, the real and principal party— to the action, and within the letter of the statute. No one doubts the power of the legislature to take away the disability of a married woman to become a witness in her own behalf, and the question is one of construction, and not of power. What did the legislature intend by this amendment of the law of evidence? Did it intend by the words "a party to an action" a special or particular class of parties— parties who had nominal or real interests—parties who were

Hooper *v.* Hooper.

femes sole or femes covert, the latter sued with or without their husbands? If we accept what the legislature has said in very plain, concise and unequivocal language, as an indication of its meaning and intention, we must adopt the conclusion that the disability to give evidence in one's own behalf is removed from all who may become or be made parties to actions and proceedings. If it was intended to include all parties, and extend to them the benefits of the amendment, what other or better language could have been employed to signify such intention? I submit that none more appropriate or significant could have been employed. And if it was designed to perpetuate the disability of a particular class of parties—married women sued or suing in conjunction with their husbands—I submit the legislature would have said so, in words, and not left it to inference and implication. When the legislature speaks in plain, precise, positive and unambiguous terms, the courts are bound to accept what they have said for what they intend, rather than to seek an intention at variance with their expressed language in reasons and causes which, however cogent and controlling they may appear to us, may never have occurred to, or influenced them. The framers of this amendment knew, quite well, that married women with their husbands were, in numerous cases, necessary and indispensable parties to legal proceedings, and without whose presence upon the record complete and adequate remedies could not be administered. And it is reasonable to think that if this numerous class were to be excepted from the effect of the radical innovation in the old law of evidence, the legislature would have signified such intention in so many words.

A married woman, made a party to an action in connection with her husband, is within the spirit and reason as well as within the letter of the amendment. The common law, in excluding parties in interest and parties upon the record from being witnesses and giving evidence in their own behalf, proceeded upon the theory of human infirmity

rather than human virtue.   It regarded the temptations of interest as stronger than the sanctions of truth, probity and personal honor; and it therefore .refused to hear the testimony of a witness, however conscientious and pure he might otherwise be, who was a party to a litigation, or who had the slightest interest in its result.   The litigation of the courts relates almost exclusively to the conduct and the acts of men toward one another.   And the first obvious effect of the rule of evidence referred to, was to exclude as witnesses and deprive the courts in their inquiry after truth and right of the benefit of the testimony of those who knew most, and could speak best, about the transaction which was the subject in dispute.   There is too much reason to think that the good which the application of this rule produced, was more than overbalanced by the ills which flowed to suitors and the public morals in the suppression of the truth and perversion of justice.   The amendment of the law proceeds upon the opposite theory.   With a higher estimate of human nature, and a wiser appreciation of the value of evidence, it no longer refuses to hear those who know most about the truth of the transaction, but accepts the testimony of parties to the controversy, and persons interested, subject to be weighed in the scale of credibility, and its value tested by the position which the witness maintains to the controversy, and the circumstances under which his evidence is given.   The principle of the amendment is general, not special.   It applies to all who may be interested in an action as parties thereto; and no good reason can .be assigned why married women, suing or being sued with their husbands, should form an exception to the rule adopted to correct what most men had come to .regard as a great evil.

There is another reason why the construction I contend for should prevail, and a party occupying the place of the defendant Ellen Hooper should be admitted to an examination in her own behalf, quite as cogent as any I have named.   The principle has prevailed in the several amendments to section 399,

Hooper *v.* Hooper.

that a party should not be examined in his own behalf against parties who are representatives of a deceased person, in respect to any transactions had previously between the deceased person and the witness. The purpose of the law was to hear both sides, and to insure to both parties to the same conversation or transaction the opportunity to speak in regard to what was said and done. Both were to be heard, and the testimony of one contrasted with that of the other. And so it provided that where one of the speakers or actors was dead the law closed the lips of the other speaker and actor also. The value of this provision all will recognize and uphold. And it is not too much to say that the amendment would have been fruitful of very great mischief, and could not have secured as it has done the favor of jurists and judges and the public at large. The construction contended for by the plaintiff in this action sets aside this salutary principle. He claimed and exercised the right, upon the trial, to be examined in his own behalf, while he denied the same right to his adversary, and thus the vital element of the amendment was disregarded and set aside. Both of them may have been, and doubtless were, the most material witnesses of what occurred. They were both actors, and the only actors, in the transaction which was the subject of the action. Without a manifestation of the clearest intention on the part of those who framed the amendment, we should not exclude the defendant from its benefits upon the hypothetical ground that such a construction might disturb the harmony of the conjugal relation. The legislature have certainly manifested no such purpose. What they have said indicates a contrary intention. For in the amendment of April 16, 1860, as an exception to the general rule of the 399th section, they declare "that neither husband nor wife shall be required to disclose any communication made by one to the other." This provision was wholly unnecessary if they were not to be examined in their own behalf, and shows an effort at least on the part of the law makers to avert the evil results from

such examinations to the confidence and peace of the con‑ jugal relation.

I have said more than I designed when I set out. The decision in *Marsh* v. *Potter*, (30 *Barb.* 506,) based on an able and well considered exposition of the question involved, is one which we should follow until it is reversed by the court of last resort.

There should be a new trial, with costs to abide the event.

[KINGS GENERAL TERM, February 13, 1865. *Brown, Lott, Scrugham* and *J. F. Barnard*, Justices.]