### METLER'S ADMINISTRATORS *vs.* METLER and wife.[*]

1. The general rule is, that where a note is without consideration, relief cannot be had in equity on that ground merely. But where the note is negotiable, and not void on its face, and in case of a discontinuance or non-suit might be held until the evidence of its being without consideration could not be had, and then a suit on it be brought against the administrators or the infant heir, to the amount of assets descended, a court of equity will order the security to be given up to be canceled.

2. When a demurrer is too extensive, or bad in part, it must be wholly overruled.

3. The peculiar relations of husband and wife will not protect her from making a discovery relating solely to her own conduct, and affecting only her own interests. In such case she may, under the recent acts, even be compelled to testify against herself.

---

[*] CITED *in Shotwell's Adm'x* v. *Struble,* 6 *C. E. Gr.* 35; *Vail's Ex'rs* v. *Central R. Co.,* 8 *C. E. Gr.* 466.

This suit is for discovery and relief. It is brought by John Kinney and Charity A. Metler, administrators of Charles W. Metler, deceased, against Orison Metler and Delilah Metler. Charity A. Metler is the widow of the intestate, and the defendants are his father and mother.

The bill sets forth that the complainant was married to the intestate in 1862; that they resided at Phillipsburgh, in Warren county, and had one child, who is still living; that the intestate owned a house and lot in which they lived, worth about fifteen hundred dollars; that in the year 1865 the intestate, through the interference of the defendant, his mother, became estranged from his wife, neglected and ill treated her, and refused to provide for her and their child; that in March, 1865, he sold his house and lot, and persuaded her to join in a deed to convey it, after which he told her that he now had all he wanted from her, and intended to leave her and make no further provision for her or the child; that the deed not having been delivered, she afterwards procured possession of it, and kept it from him and the grantee; that he tried to get her to sign and acknowledge another deed, by persuasion, threats, and severe floggings; that he left her and carried away her infant child for the same purpose, but that she held out, and did not give up the first deed, or execute a new one.

That after this the intestate, who was by occupation an engineer, or engine-driver on railroads, and was and had for years been much absent from home in the western and southwestern states, gave to the defendant, Delilah Metler, his promissory note for fifteen hundred dollars; that this note was given without any consideration; that the defendant, Delilah, had for years been living separate from her husband, Orison, who was a wandering, homeless shoemaker, without property, and that she had no means or property except a small house in which she lived, not wholly paid for, and could not give, and did not give, any consideration for the note; that the note was given to her when the intestate was about going out to the oil regions, and was given with the understanding that if he returned alive it should be given up to him; that it was given for the amount for which he had

agreed to sell his homestead, being about the value of it, and was given with the fraudulent intention and purpose by both parties, to enable his mother to cover his property and defeat any recovery his wife might obtain against him for alimony or maintenance, and with the view that, in case of his death, his mother might have the property, and that his wife and child should have none. The intestate did return alive from the oil regions, but did not require his mother to give up the note, and on the first of December, 1865, met an unexpected death, being killed in an accident on a railroad in this state.

The bill further alleges that the defendants have lately commenced an action in the Supreme Court against the complainants upon said note, and have declared on it as a note given on the third day of May, 1865, for fifteen hundred dollars, payable to the order of the defendant, Delilah Metler; and that that suit was commenced without the knowledge or consent of the defendant, Orison Metler.

The bill insists that complainants are entitled to a discovery to aid them in their defence at law, and also to relief in this court. It prays for a discovery, and for relief by perpetually enjoining the suit at law, and ordering the note to be given up to be canceled.

The defendants demur to the bill generally, and allege as a special ground of demurrer to the discovery, that the defendants, being husband and wife, are not either of them bound to make any answer or discovery that may affect the claims or rights of the other.

*Mr. Shipman,* in support of the demurrer.

*Mr. Dumont,* contra.

THE CHANCELLOR.

The first question is, whether the complainants are entitled to the relief sought for. That relief is to have a perpetual injunction against the proceedings at law, and to have the note delivered up to be canceled.

Metler's Administrators v. Metler.

The note, being without consideration, is void, and cannot be recovered upon at law.   And it is contended that, as the complainants have a complete defence at law, they cannot resort to equity.   Such, no doubt, is the general rule, and were the present suit at law the only matter to be relieved against, it might decide this case.   But here is a note, not void on its face, which in case of a discontinuance or non-suit, might be held until the evidence of its being without consideration could not be had, and then a suit on it brought against these parties, or against the infant heir, to the amount of assets descended.   In such case the jurisdiction of courts of equity to order the security to be given up to be canceled, is now well established.   There has been some diversity of opinion and decision on this point, and more in cases when the instrument asked to be canceled is at law void upon its face; but even then the weight of authority is in favor of it. In cases where the instrument is on its face valid, and especially if negotiable, the jurisdiction of the court is founded upon principle adopted among other cases in bills *quia timet,* and is now settled by authority.   1 *Story's Eq. Jur.,* § 699, 702; *Minshaw* v. *Jordan,* 3 *Bro. Ch. Cas.* 17; *Newman* v. *Milner,* 2 *Ves.* 483; *Bromley* v. *Holland,* 7 *Ves.* 3; *Jervis* v. *White, Ibid.* 413; *Jackman* v. *Mitchell,* 13 *Ves.* 581; *Wynne* v. *Callander,* 1 *Russ.* 293; *Peirsoll* v. *Elliot,* 6 *Peters* 95; *Hamilton* v. *Cummings,* 1 *John. C. R.* 520.

As the complainants are entitled, upon the case made in their bill, to have this note delivered up to be canceled, the demurrer cannot be sustained to the relief.   It is bad in part. But it is a well established rule in equity when a demurrer is too extensive, or bad in part, that it must be wholly over-ruled.   *Story's Eq. Pl.,* § 443, 448, 692; 1 *Daniell's Chan. Prac.,* (3d *Amer. ed.*) 568 *and* 608.

This is a demurrer to the whole bill, and includes both the relief and discovery.   The causes of demurrer assigned, which together must be co-extensive with the demurrer, are in part to the relief and in part to the discovery.   And then by that rule, although the demurrer might be good to the

discovery, yet, being bad in part, it must be wholly overruled. The only exception to this rule, if there is any, is where a bill for discovery also prays relief, and a general demurrer is held good to the relief but not to the discovery.   In such case the former English decisions, and the decisions in America, hold that the demurrer will not be a bar to the discovery. The modern English cases hold that it will, on the ground that the discovery being only the means for the relief, if that relief cannot be granted the discovery is of no avail.   1 *Story's Eq. Jur.*, § 70 ; 1 *Daniell's Chan. Prac.* 569.

The court, in *Miller* v. *Ford, Saxt.* 365, adopted the modern English rule, that when a plaintiff on a bill praying relief, is not entitled to relief, he is not entitled to discovery. But this doubtful exception does not affect the converse proposition, that where, on demurrer to the whole bill, the complainant is held entitled to the relief, the demurrer cannot be sustained as to the discovery, even if a demurrer to the discovery alone would be good.

The expression in *Miller* ~v. *Ford,* " that when a party is not entitled to relief he is not entitled to a discovery," is strictly correct, when applied, as it was in that case, to a bill for relief; but not correct when applied to a bill for discovery only, when not praying relief.

The general rule is that in all cases where the complainant is entitled to relief, he is entitled to discovery.   But to this there are exceptions ; as in cases where the discovery would subject the defendant to indictment, forfeiture, or penalty, when it would be a breach of professional confidence, or would be of matters irrelevant and immaterial to the relief sought ; in all which and similar cases, a demurrer may be taken to the discovery only.   1 *Daniell's Chan. Prac.* 571, 588 to 607.

It is clear, therefore, that whether a demurrer to the discovery in this case, on the ground assigned, would be good or not, that the demurrer must be overruled.   It cannot be sustained in part.

This state of the pleadings would render it unnecessary to

consider the question raised and argued, whether the defendants can be compelled to answer and make discovery, when the answer of either may affect the other on account of their relation as husband and wife.

But as this court may in its discretion, before actual decree, give leave to amend the demurrer, or to put in a less extended demurrer, (1 *Daniell's Chan. Prac.* 609), and the matter has been argued, it is necessary to consider and determine it.

And here the question is, whether either of the defendants can be required to answer, or could be protected by demurrer from the discovery.

And first, can the defendant, Delilah Metler, be protected from discovery? The subject matter of the suit is a note given to her by her son in May, 1856. She was then married, and by the married women's act of 1851 she was entitled to receive and hold it to her separate use, as if she were a single female, free from the control of her husband; he has no interest in it, or the controversies concerning it. The suit at law was brought by her. His name was used by her without his knowledge, because the law requires him to be joined in a suit brought by her for her own rights. She has perhaps the right so to use it, without his authority.

The suit is of necessity brought against both, but it is to enjoin *her* suit, and to compel *her* to give up and cancel the note, which she is charged with obtaining without consideration, and for the purposes of fraud. I do not find anything in the statutes or decisions of the courts, or in the policy of the law arising out of the peculiar relations of husband and wife, to protect her from making a discovery relating solely to her own conduct, and affecting only her own interests. I do not see any reason why, in such case, she may not, under the recent acts, even be compelled to testify against herself.

A married woman is not compelled to make discovery or to testify in suits against or by her husband, when he is the party interested or to be charged; and this whether she is a

party with him or not. But there is no case in which it is held that she need not make discovery or testify where the suit concerns herself, or her property only. I agree with the court in *Handlong* v. *Barnes*,* and with the cases there cited, that it is the policy of the law arising out of the relation of husband and wife, and not the mere matter of interest, on which the exclusion is founded. But this must not imply assent to the position taken in one of the opinions, that if the suit was for property solely her own, and her husband joined for form only, as the judgment would be against him as well as herself, she could not testify. Even if the judgment could be against him for costs, the maxim *de minimis* would there apply. But if he had a joint interest with her in the lands, as was the fact for aught that appears in the case, then as she could not be sworn, Barnes could not, as the act prohibits it. And the decision was that required by the act.

But when the wife alone is the real plaintiff or defendant, she is made competent by the act of 1859 which must be read, notwithstanding its peculiar wording, as if it expressly made all parties competent to testify. If it only removed the disqualification of interest, as before it nominal parties without interest could not testify, no party could yet be sworn. The contrary is the well settled construction, and all parties not within the exceptions are competent. There is nothing in the words of the act, and no reason in the policy of the law, why a woman having a suit should not be permitted or compelled to testify when her husband has no interest.

Her evidence in such case, as in this, would affect her own rights only,; and here the old sound maxim should be applied, *cessante ratione cessat ipsa lex.* This maxim must govern in the application of a rule founded solely on a reason of policy. And this is a case in which the observation repeated with approval by the Chancellor, in *Wheaton* v. *Phillips,* 1 *Beas.* 221, should have great weight, "that remedies must adapt themselves to the times, and to new customs and manners as they arise."

*1 *Vr.* 69.

The English cases cited in *Handlong* v. *Barnes*, are those in which the husband alone was the party. The act of 14 and 15 *Vict.*, *ch.* 99, August, 1851, called Lord Brougham's act, only enacted that parties to the suit could be sworn. The act of 16 and 17 *Vict.*, *ch.* 83, called Lord Campbell's act, and founded on his observation in *Stapleton* v. *Crofts*, allowed and compelled the husbands and wives of parties to be sworn. The act of this state is in effect the same as Lord Brougham's, and under that the Court of Common Bench unanimously allowed the wife to be sworn in a suit brought by her in the names of her husband and herself, for an injury to her. This case of *Stokehull* v. *Pettingell*, is reported in a note to *Stapleton* v. *Crofts*, 10 *Eng. L. & Eq. R.* 458, but on account of Lord Campbell's act of 1853, is not found in the regular reports.

In New York, the amendments to the Code, § 399, passed successively in 1857, 1860, and 1862, each provided that " a party to an action may be examined as a witness in his own behalf, or in behalf of any other person."

It was held that this did not make the husband or wife of a party, a competent witness. But when the husband or wife was the meritorious party, although the other was joined, such party was competent. *Marsh* v. *Potter*, 30 *Barb.* 506; *Babbott* v. *Thomas*, 31 *Barb.* 277; *Schaffner* v. *Reuter*, 37 *Barb.* 44; *Hooper* v. *Hooper*, 43 *Barb.* 292.

The Massachusetts act of 1856, *ch.* 188, authorizes parties to all actions to testify for themselves. And their courts hold that the wife is a competent witness in a suit brought for a personal injury to herself, in the names of herself and husband. *Snell* v. *Westport*, 9 *Gray* 321. And this, after they had determined that she was not competent when her husband alone was the party. *Barber* v. *Goddard, Ibid.* 72.

The cases as to the right of a discovery from a married woman in courts of equity, are expressly put upon the ground that her evidence would charge or benefit her husband; and I find no case in which she has been protected from discovery, where the question was as to her own rights, and her hus-

band was joined for form, or because he was a necessary party. In the cases where she has been protected, the courts, in their reasoning and distinctions, place it on the ground that it is the rights of the husband that are to be affected by her testimony; and in the cases where discovery from her was sought and refused, to sustain actions against her husband for debts due from her before marriage, the husband was the real and only party interested. 1 *Daniell's Chan. Prac.* 144; 2 *Story's Eq. Jur.*, § 1496.

In *Barron* v. *Grillard*, 3 *Ves. & B.* 166, the Chancellor says: "The husband is in this case the responsible party, and the wife is made defendant merely for form. The question then, is whether a discovery from her can be compelled. No single case of discovery *merely* has been cited. The general principle is, that the wife shall not give evidence against her husband."

In *Le Texier* v. *Margrave and Margravine of Anspach*, 5 *Ves.* 322, and 15 *Ves.* 159, on demurrer to discovery by the wife, the court held the question to turn on the fact, whether the wife acted as the usual household agent of her husband, or whether she had made a substantial contract with him, herself.

In *Wrottesley* v. *Bendish*, 4 *P. W.* 236, it was taken for granted that, by the settled practice, the wife must answer when made a co-defendant with her husband, and Lord Chancellor Talbot says: "But, as in all times heretofore, the wife, as well as the husband, has been compelled to answer, I would not take upon myself to overthrow what has been the constant practice."

Besides, if this was not settled by authority, the consequences of protecting the wife from answer and discovery would, under the change of the law as to married women, be disastrous, and protect outrageous frauds; and are such that in a new question should settle it against the protection. A married man could, by any fraud, possess himself of property or securities, and by taking them in name of his wife, could protect both her and himself from answering, and thus avoid

that discovery which is one of the most effectual means of administering justice in this court.

No demurrer, therefore, could protect the defendant, Delilah Metler, from answering and making discovery. The same reasoning would protect the defendant, Orison Metler, from making discovery that might be used against his wife, who is the real defendant, did not the proviso in the act of 1859, excluding the wife, imply, upon settled principles of interpretation, that the husband might be a witness against his wife. By this implication, ever since the passage of this act, in divorce cases in this court, the husband has been admitted as a witness against his wife, and the wife has been admitted upon the implication arising from the exception in this proviso.

The court will see to it on the hearing of the cause, that the husband's answer shall not be used as evidence against the wife, if in any way prohibited by the rules or policy of the law.

   ---

* Decree affirmed, 4 *C. E. Gr.* 457.