BINGHAM, RECEIVER, &c., *v.* DISBROW AND OTHERS.

*Practice—Supplementary Proceedings—Transcript of Judgment—Execution— Residence of Judgment-Debtor—Husband and Wife—Witness.*

CLERKE, J.—This is an action brought by a receiver, appointed under supplementary proceedings, to set aside an alleged fraudulent assignment made by the judgment-debtor. Stephen R. Disbrow, a brother of the judgment-debtor, died in November, 1855, intestate, leaving property, to a distributive share of which the latter was entitled, amounting to $2,653.19.

On the 22d of December, 1855, he assigned his interest in the personal estate of the intestate to William Strang, his brother-in-law, for $900, for which Strang gave his promissory notes.

Subsequently, on or about the 28th of February, 1856, Strang assigned the interest thus assigned by Disbrow to Disbrow's wife, receiving from her, as the sole consideration, the three promissory notes which he had given to Disbrow. These are the assignments which this action is brought to set aside.

It was contended at the trial, and before the General Term, that the proceedings supplemental to execution were insufficient, as it did not appear by the affidavit, on which the order was founded, that a transcript of the judgment had been filed in Tompkins county, to the Sheriff of which county the execution had been issued. This is not required by section 292 of the Code of Procedure; it merely requires proof that an execution had been issued to the Sheriff of the county "where the judgment-debtor resides," and that it had been returned unsatisfied.

This is sufficient to give the Judge jurisdiction. It is also contended that, as the Defendant afterwards removed to Cayuga county, the order for his examination could not be granted, without having issued another execution to the Sheriff of that county.

The first part of the section requires that an execution should have been issued to the Sheriff of the county where the Defendant resided at the time of issuing the execution; and, undoubt-

edly, it also provides that he should appear at a time and place within the county in which the execution was issued.

The section does not expressly refer to cases which show, that after the issuing and return of the execution, the Defendant removed to another county.

Undoubtedly, the power given by this section being merely a statute authority, unless the facts necessary to bring the case within the section are proved, the Judge has no jurisdiction; and the mere appearance of the judgment-debtor, and his examination without objection, do not confer jurisdiction.

But all that the section expressly requires in reference to the issuing and return of an execution is, that one should be issued and returned to the county where, at the time of issuing it, the judgment-debtor resides, or has a place of business. It does not require that, if he should afterward remove to another county, another execution should be issued and returned unsatisfied.

In the absence of any express provision in such a contingency, it is fairly to be presumed that the Legislature did not intend to alter the practice in relation to creditors' bills; and it has been frequently decided, that as supplementary proceedings are a substitute, to some extent, for creditors' bills, the rules settled in reference to the proceeding under the bills may be regarded as controlling, when not altered by the Code of Procedure, or the practice under it.

Now, in a creditor's bill, it was only necessary to allege that an execution on that judgment had been issued to the county in which the judgment-debtor resided at the time it was issued. If he had removed to another county, it was not necessary to allege that a second execution had been issued to that county; and it would have been no defence for the Defendant, in the creditor's bill, to set up the removal and the omission to issue the new execution. In the case before us, all that the section (292) requires, and all that was necessary to maintain a creditor's bill, was shown when the order was granted requiring the Defendant to appear before a Judge in Cayuga county—being the county in which he resided at that time.

I hold, therefore, it is only necessary that an execution should have been issued, either to the county where the Defendant formerly resided, or the county in which he was residing at the date of the order. In no case is it necessary to issue more than one.

The affidavit in this case shows that the Defendant has property, which he refused to apply towards the satisfaction of the judgment; and this, together with the allegation that a judgment had been recovered, and an execution issued to the county in which the Defendant formerly resided, was all that was necessary to entitle the Plaintiff to the order which was issued.

The Special Term found, as matter of fact, that the assignment to Strang, and the subsequent assignment by Strang to Disbrow's wife, were made without any valuable consideration, and were made and accepted with intent to hinder and delay the Plaintiff in the judgment, and to prevent him from collecting it.

This finding is conclusive here. The only question, therefore, that remains is, whether Mrs. Disbrow was a competent witness in the cause.

It is not contended that, at the time of the trial (April, 1859), she could have been a witness on behalf of her husband; but it is contended, as she was a co-Defendant, and claimed an interest in the subject of the action, totally different and distinct from that of her husband, that she was a competent witness on her own behalf; and undoubtedly the weight of authority is in favor of this proposition (Barton *v.* Gledhill, 12 Abb. 246; Shoemaker *v.* McKee, 19 How. 86; Marsh *v.* Potter, 30 Barb. 506; Babbott *v.* Thomas, 31 Barb. 277; Schaffner *v.* Reuter, 37 Barb. 44; Hooper *v.* Hooper, 43 Barb. 292).

The question, I believe, has never been decided by this Court, but the ground upon which the rule was placed in these several cases is, I think, incontrovertible; and that is, that section 399 of the Code of Procedure is sufficiently comprehensive to authorize the wife or husband to be a witness in his or her own behalf, whether they are co-Plaintiffs or co-Defendants.

They are not within the exceptions contained in that section; and there is no prohibition in any part of the Code forbidding the

husband or wife from being a witness in his or her behalf, when joined as Plaintiffs or Defendants.

When the Legislature enacted that a party to an action or proceeding may be examined as a witness in his own behalf, the same as any other witness, without any qualification or restriction relative to the evidence of husband or wife in such case, it must be presumed that no such exception was contemplated.

Most of the decisions to which I have referred were in actions brought to set aside deeds or assignments made by the husband to the wife, on the ground of fraud; and the wife's evidence was offered, or introduced, for the purpose of confuting the imputation of fraud.

In none of these cases, as in this, could the evidence enure to the benefit of the other Plaintiff or Defendant.

Here, the wife alleges that the assignment was for a valid consideration, consisting of eleven hundred dollars, which she had received as one of the next of kin of a deceased relative, or, in the language of the answer, which she became possessed of by " descent."

On principle, I consider the decisions to which I have referred correct.

It cannot be pretended that the Legislature designed, by section 399 of the Code of Procedure, to admit parties to an action to be examined as witnesses who, before its adoption, were incompetent to testify in any action or proceeding.

For instance, persons convicted of felony were and are incompetent to testify under any circumstances, or to any extent. Of course, section 399 had not the effect of restoring their competency. But can it be said that married women were incompetent, generally, as witnesses in actions or proceedings?

The law placed them under no such disqualification.

It would be preposterous if it did. Marriage is not felony; the law has never presumed that the person who has committed matrimony is not worthy of belief.

The only difference which the law made between married persons and others, as witnesses, was that the former were incompetent to testify for or against their respective husbands or wives.

In all other respects, of course, there was no difference.

And as to their capacity to testify as parties in an action or pro-ceeding, they were no better or worse than others in that respect. All parties to an action were alike incompetent.

But when the disability of parties to an action was removed, it made all capable who were incapable of being witnesses before, and removed all restrictions, except those that had expressly existed at the time of the adoption of the section.

In reference to felons, the restriction remained; in reference to married persons, the particular restriction in relation to them also remained—namely, that they could not testify for or against their respective husbands or wives.

By this section, then, when they were parties to an action, they became as capable as any other parties of testifying on their own behalf.

In this case the evidence of Mrs. Disbrow could have no direct effect for or against her husband.

She was offered solely for the purpose of showing that the assignment was given to secure a loan which she had made to her husband, and that the assignment was founded on a bonâ fide consideration.

If the assignment was upheld, it would satisfy his indebtedness to her; if set aside, it would satisfy the judgment-creditors' claim against him, so that his interest in the result was clearly balanced.

This, I think, would take her testimony out of the rule exclu-ding the testimony of husband and wife for or against each other.

It has always been the rule that a wife may be a witness in an action between third persons, not directly affecting the interest of the husband, though her evidence may possibly expose him to a legal demand; as, in an action between third persons, for goods sold and delivered, to prove that the goods had been sold, not on the credit of the Defendant, but on her husband's credit (1 Phil-lips on Evidence, p. 87 ed. 1839, and cases there cited).

When we consider the reason of the rule for excluding the husband and wife from testifying, either for or against each other, it will be very obvious that it does not apply to a case in which

the wife, as a party in the action, offers to testify in her own behalf, and claims the benefit of section 399 of the Code of Procedure, in a case like the present.

The rule is founded partly on a principle of public policy, which deems it necessary to guard the security and confidence of domestic life, even at the risk of an occasional failure of justice.

The first reason evidently has no longer any existence, either here or in England. Interest has not been a ground of incompetency for many years; and as to the other reason, it would be absurd to say that the testimony of a wife, in her own favor, in an action in which she is a party, contending for her alleged individual rights, could impair the security and confidence of her domestic life.

We all know, from our experience of the domestic relations in Anglo-Saxon countries, that the identity of the interests of husband and wife, in most instances, still morally exists, as it has always existed; and as long as interest was a ground for excluding the testimony of all persons, the law was perfectly consistent with itself in excluding the testimony of husband and wife in behalf of each other.

But when the objection as to interest was removed, the other reason of the rule, founded on the apprehension of danger to the security and confidence of domestic life, fell with it.

While we recognize the identity of interest morally between husband and wife, every accession to the property of the one must be beneficial and pleasing to the other; and would therefore be more likely to produce harmony, rather than discord, between them.

For all these reasons, I conclude that there was no good legal cause for excluding the testimony of Mrs. Disbrow on the trial of this action.

Although the judgment was reversed, yet a majority of the Judges did not agree upon the grounds of reversal; so no principle is settled by it.

JOEL TIFFANY,
State Reporter.