The Chancellor.
The prayer of the bill is, that the bond and mortgage executed by Mumford to Cornish, and by Cornish assigned to the defendant, Bryan, may be declared null and void, and may be decreed to be delivered up to the complainant, and be cancelled.
This relief is resisted upon several grounds.
First. The power of the court is questioned.
Second. Hpon the ground that the allegations of the bill, respecting fraud in procuring the execution and delivery of the bond and mortgage, are not sustained by the proofs.
Third. That the defendant, Bryan, is a bona fide assignee, without any notice as to the consideration upon which the bond and mortgage were executed, and that his rights ought not to be affected by the transactions between the original parties.
Fourth. That whatever payment, or satisfaction of the bond and mortgage, was made by the complainant to Mumford, was after the assignment, and under circumstances to charge the complainant with notice of the assignment.
*151 And lastly. That the bond delivered by Mamford to Cornish was a new consideration for the bond and mortgage, and was received as such by the complainant, with full knowledge of the alleged fraud; and that he is thereby estopped from setting it up against the defendant, Bryan, who is a bona fide assignee.
The power of the court to order a bond, or other instrument, to be delivered up to be cancelled, has been too frequently exercised to be now called in question. The authorities were very carefully examined by the Chancellor in Hamilton against Cummings, 1 J. C. R. 517, and the propriety of the court exercising such power in particular cases vindicated. “ This court has the power to order a bond or other instrument to be delivered up to be can-celled, whether such instrument is or is not void at law, or whether it be void on the face of it, or by matter shown by the proofs in the cause; but the exercise of this power rests in the sound discretion of the court, and is regulated by the circumstances of each particular ease.”
The mere fact, that the grounds upon which the jurisdiction of this court is invoked may avail the party in an action at law, and constitute a valid defence by plea, or otherwise, is not a sound objection to the court’s exercising this power. If a party holds an obligation which ought to be cancelled, and persists in holding it for the purpose of harassing the obligor with a suit, he ought not to be permitted to select his own place, time, and circumstances for such prosecution. Where a suit at law is commenced, and the defence at law is complete, then that is a good objection for this court’s refusing to change the forum of litigation. Where, too, the defence is of a character plain and palpable, and within the command of the party at any time, this court ought not to encourage a resort to an expensive litigation in a Court of Chancery. In all cases, the court must exercise a sound discretion, and be regulated in its action by the propriety of the particular case before it. The case made by this bill is one. *152 entitling the complainant to relief. The grounds upon which he insists the bond and mortgage should not be enforced, while they might protect him against a recovery in any action at law brought against him, are of a character to render a defence at law embarrassing and hazardous. Besides, if the complainant’s allegations are true, the mortgage ought not to remain an encumbrance, or at least a blemish, upon his title. His only remedy to relieve himself of the embarrassment which this mortgage might occasion him, and of the serious injury to his title, is by a resort to this court. I think the complainant is rightly before this tribunal, and should be relieved, if he has sustained his case by proof.-
As to the bond and mortgage having been procured from the complainant by the artifice and fraud of Mumford, if the complainant’s right to relief turned solely upon this question, his case could not be sustained. The allegations of the bill in this particular are not proved. The important charge, that Mumford fraudulently assumed to be the agent of a line of steamers between New York and San Francisco, with power and authority to vend tickets for passengers, is not made satisfactory by the evidence. He was openly acting as such agent in the city of Philadelphia. It is not pretended he assumed such authority for the mere purpose of imposing upon the complainant. The only evidence of his want of authority is the fact, that upon the complainant’s calling at the office of the company in the city of New York, for whom Mumford assumed to act, some one at the office denied that Mumford was an agent. There might have been reasons existing at the time when inquiry was made for denying his agency. It was on the eve of the sailing of the steamer, at a period when, it is a matter of notoriety, the demand for passages could not be supplied. But it is unnecessary to speculate upon this matter. Satisfactory proof was within reach of the complainant. If Mumford was not an agent of the company, some one connected with the *153 company should have been called as a witness to establish the fact. The proof, as to the particulars of the transactions which took place during the negotiation of the parties respecting the bond and mortgage, does not correspond with the allegations of the bill in every particular. According to the testimony of Eli Ilopkins, the whole transaction was this : the complainant applied to Mumford for a ticket, and offered to give him a mortgage on his house and lot in Camden for three hundred dollars. He wanted Mumford to give him a ticket for one hundred and eighty dollars, and the balance in money for the mortgage. Mumford refused, and said he would not take a mortgage for less than six hundred dollars. It was then agreed between them that the bond and mortgage should be given for six hundred dollars; that Mumford should give complainant a ticket for a passage from New York to California, at the price of one hundred and eighty dollars, pay him in cash one hundred and twenty dollars, and give him a receipt for $300, which receipt would1 be good at any time as a payment for that amormt on the bond and mortgage. The witness does not state that Mumford used any artifice, or even persuasion, to induce the complainant to make the arrangement. He deliberately entered into this arrangement. Mumford gave him one hundred dollars in cash, a memorandum for the ticket, and a receipt, as agreed upon, for the three hundred dollars, and the complainant delivered to Mumford the bond and mortgage. Thus far there was no fraud in this transaction, unless Mumford assumed his character as ticket agent for the fraudulent purpose of procuring the complainant to execute the papers; and upon this point, as I have already remarked, the evidence is not satisfactory. The next question is, as to the rights of Kyan under his assignment.
What, then, were the respective rights of the original parties at this crisis in the transaction ? The bond and mortgage had been delivered. The complainant had ro *154 ceived a valid consideration for them of two hundred and eighty dollars, one hundred of which was in cash, and for the remaining one hundred and eighty dollars, he took a memorandum, or order, for the delivery of a passage ticket from New York to California, in a steamer to sail from the city of New York on the then 9th day of June. On the 8th day of June, Mumford assigned the hond and mortgage to the defendant, Eyan. Eyan took the bond subject to all the equities which existed at the time of the assignment between the obligor and obligee. On the 8th of June, it was a good and valid obligation in the hands of the obligee for two hundred and eighty dollars. By the assignment, all his title and interest passed, and became vested in his assignee. That interest was not affected by the subsequent failure of the obligee to furnish the passage ticket. The assignment was executed on the 8th of June. The ticket was to be furnished on the 9th. If this part of the consideration had failed while the bond remained in the hands of the obligee, an equity to have that amount deducted from, or credited on the bond, might have arisen. But no such equity can attach to the bond in the hands of a bona fide assignee. If A. executes to B. his bond, and takes, as a consideration for it, B’s promissory note at ninety days, if B. assigns the bond to C. before the note becomes due, A. cannot resist the payment of his bond in the hands of the assignee on the ground of a failure of consideration. And upon the same principle, the complainant could not resist the payment of his bond to the amount of this two hundred and eighty dollars, on the ground that so much of the consideration had failed. The assignee was a bona fide holder of the bond, and, as such, was entitled to recover of the obligor two hundred and eighty dollars, even if he had notice of the whole transaction between the obligor and obligee.
But a further ground upon which the complainant asks relief is, that the bond has been fully paid and satisfied, and that such payment was made to Edward Mumford, *155 the obligee, without the complainant’s having notice of the assignment. If this is so, the bond is satisfied, according to the provision of the statute. Statutes of New Jersey 801.
The evidence on this point is full and satisfactory. After the 9th of June, the complainant returned from the city of New York baffled and disappointed in his efforts to procure his ticket for a passage to California. The only inducement for which he had executed the bond and mortgage had failed. He at once sought for Mumford, for the purpose of rescinding the contract and procuring a return of his obligations. On the 12th of June, he had an interview with him in the presence of two companions, Eli Hopkins and Henry Graham, who, also, had received from Mumford a like memoranda or tickets with that which the complainant had received, and who, in like manner, had been disappointed. Hopkins thus details what took place between the parties. As the order of the occurrence is of some importance, I give the language of the witness. “ We demanded our money. He then paid Henry Graham his one hundred and eighty dollars; then he asked David Cornish (the complainant) to pay him the one hundred dollars he had paid him. David paid him ; and then he paid me back my one hundred and eighty dollars. I received part of the same money which David paid him. After David paid him the one hundred dollars, of course he gave him up the check and receipt for three hundred dollars. Then David said, now I want to have this thing settled right away. I have given you up your check. I have given you up your receipt.' I have given you up your money. How I want you to give me up my mortgage. His reply was, “ David, I have not got your mortgage just here, but I will have it for you in the course of a few days, or as soon as possible.” The statement of this witness is corroborated by Henry Graham. Mumford then gave complainant a writing acknowledging the payment in full of the bond and mortgage. The evidence *156 clearly shows that the complainant paid the bond in full without notice of the assignment; and that when he returned the consideration, there was no ground for suspicion that the papers were not then in the actual possession of Mumford. This constitutes a valid defence against the bond under the statute. I have been somewhat embarrasssd, as to this part of the case, from the fact, that the bill does not directly charge that the complainant satisfied the bond without having notice of the assignment. I admit that I have been obliged to give a very liberal construction to the bill to enable the complainant to avail himself of this ground of relief. I have felt myself justified in doing so to reach, what appears to me after a careful review of all the circumstances, the real merits and equity of the case. The defendant must be the sufferer, but he cannot be said to be an innocent sufferer. He has involved himself in this difficulty hy his own laches, and by reposing undue confidence in a man who, up to the time of the assignment, was a total stranger to him. He bought the bond and mortgage within five days after their execution, and before the mortgage was recorded, at a discount of fifty dollars. He did not have the mortgage recorded until the 26th of June; and, instead of giving notice at once to the complainant of the assignment, he preferred reposing upon his confidence in Mumford. He thus exposed both himself and the complainant to Mumford’s dishonesty, and the law makes the defendant the sufferer.
But, on behalf of the defendant, it is insisted that the instrument of writing, which was executed and delivered by Mumford to the complainant on the 14th of June, when the consideration of the bond was returned to Mumford, is an affirmance of the existence and validity of the bond and mortgage. I do not see how such a construction can be given to the instrument. After the complainant had returned the consideration, and Mumford had refused to deliver up the papers, the complainant demanded secu *157 rity for their delivery. Mumford then executed a writing in the nature of a bond with a penalty of twelve hundred dollars. The condition recites the bond and mortgage, that the complainant had not made use of the money, and wished to pay the full amount in advance for principal and interest. It then declares as follows: “I, the said Edward Mumford, bind myself, my heirs and executors, to pay said instalment, and relinquish the same, having received the full sum of six hundred dollars and costs from the said David B. Cornish on account of his mortgage, hereby discharging the said David B. Cornish from any payment or sums of money that may come due on the same, and to stand make good any payment that may come due on account of the same, or to any other person or persons whatsoever, the said Edward Mumford binds himself to take up the said mortgage, and give the said David B. Cornish a release in full as soon as possible.”
Whether the complainant would have been justified in returning the consideration he had received for the bond, or in paying the bond upon the receipt of such a paper, and could, after doing so, have protected himself against the payment of the bond in the hands of an innocent holder, is a question different from the one we have to solve in the case before us. He had satisfied the bond, not upon condition that Mumford should execute this paper, but he had satisfied it unconditionally, under the impression and belief that the bond was at the time in the hands of the assignee, and would be forthwith delivered up to him. The paper can be looked upon in no other light than as an acknowledgment that the bond and mortgage had been satisfied, and as an indemnity to the complainant against any use of them to the complainant’s injury. That such was the intention of the parties is evident ; and such intention is not inconsistent with a strict legal construction of the instrument.
I shall, therefore, decree that the bond and mortgage be delivered up and cancelled. The decree must be with *158 out costs. There is no evidence that the complainant notified the defendant, before instituting this suit, of the grounds upon which he claimed relief, or that the defendant had any knowledge of the complainant’s equities.