Chase v. Chase.

---

THE EXECUTOR OF NELSON CHASE, deceased

*v.*

HATTIE C. CHASE.

1. This court has power to decree the surrender of a bond, even though a successful defence may be made at law against a recovery on it, but where an action at law is already pending, and the defence at law is complete, it will not, as a general rule, interfere.

2. To justify this court in taking jurisdiction in any case, where an action at law is already pending, the case must involve some equitable element which the common law court cannot apply, and which must be applied in order that full and complete justice may be done.

3. The credibility of witnesses and the force and weight of evidence are matters which, by our system of jurisprudence, are committed, in litigations which are the proper subjects of common law cognizance, to the exclusive determination of a jury.

---

On motion to dissolve an injunction, heard on bill and affidavits and answer and affidavits.

*Mr. Gilbert Collins,* for the motion.

*Mr. Anthony Q. Keasbey, contra.*

VAN FLEET, V. C.

The principal object of this suit is to procure a decree directing the defendant to surrender a bond for cancellation. Preliminary to the main relief asked, an injunction was granted, on the

Chase *v.* Chase.

filing of the bill, staying the further prosecution of an action at law which the defendant had brought to enforce the payment of the bond. The defendant now moves to dissolve the injunction, and the question which this motion raises is, Is it necessary to the doing of full and complete justice that the forum of the litigation should be changed? The suit at law was commenced on the 10th day of January, 1891, and the bill in this case was not filed until the 5th day of September following, and not until after issue had been joined in the action at law and it had been noticed for trial.

The bond, which the complainant seeks to have surrendered, was made by his testator, Nelson Chase, to William Dunning, on the 1st day of December, 1877, for $10,000, payable six months after date. Its payment was secured by a mortgage, executed by Chase and his wife, on Chase's undivided third of a tract of land situate on the corner of Broadway and Liberty street, in the city of New York. The bond and mortgage were given in part to protect Dunning against the liability he had incurred in endorsing two notes of $2,600 each for Chase. That this is the fact appears by the evidence of Dunning, given in a suit, instituted in the Supreme Court of New York, for the partition of the land situate on the corner of Broadway and Liberty street and other lands. In testifying in that suit, in April, 1881, he said that the mortgage above mentioned had been made to secure him for the endorsement of two notes, of $2,600 each, and some other considerations which were private between Mr. Chase and himself, but, so far as he was concerned, he would be willing, when the notes were out of the way, to relinquish the mortgage. He subsequently said: " I cancel the mortgage when the notes are out of the way." The lands sought to be partitioned were subsequently sold and conveyed under an order of the court in which the partition suit was pending, and the proofs show—in fact it is undisputed—that the two notes endorsed by Dunning were paid out of Chase's share of the proceeds of sale. This is the complainant's case, except it is also shown, and undisputed, that Chase died in March, 1890 ; that the defendant is his widow and a daughter of William Dunning, the obligee named in the bond

Chase v. Chase.

in suit; that the bond was assigned by Dunning to the defendant on the 9th day of January, 1891, and that she brought suit on it the next day. In addition to the facts just stated, the complainant alleges that the defendant was dissatisfied with the provision made for her by her husband in his will; that her father assigned the bond to her without consideration, and simply for the purpose of rendering himself competent as a witness in a suit which it was agreed she should institute on the bond, and that the assignment and suit are parts of a fraudulent scheme concocted with a view of enabling her to get a larger part of her husband's estate than he intended she should have.

The defendant denies that the payment of the bond assigned to her was secured by a mortgage, or that her bond is the bond which accompanied the mortgage made by Chase to Dunning on the 1st day of December, 1877. She says that though her bond is identical in parties, date, amount and time of payment with the bond recited in and accompanying the mortgage, it is, nevertheless, an entirely different and distinct instrument; or, stated in another form, her claim is, that Chase gave two bonds on the same day to the same person, each for the same sum and maturing at precisely the same time, the payment of one of which was secured by a mortgage, and the other not, and that she holds the one which was not secured. Her claim is supported by the evidence of her father. He was examined as a witness, *de bene-esse,* in the action at law on the 24th of February, 1891, and again on the 16th of April ensuing, and died in the month of June following. The defendant has annexed a copy of his deposition to her answer. It is undisputed, that he testified, in giving his evidence in the action at law, that the payment of the bond in suit was not secured by a mortgage, nor did it accompany a mortgage; that it was given as evidence of the amount due to him for services rendered to the obligor extending over a period of twelve years; that he repeatedly requested payment, and that the obligor on each occasion promised to pay when he had funds, but that nothing had been paid. If his evidence is true, the bond is unquestionably a valid and existing obligation. His evidence shows, moreover, that the complainant's bill rests on an entirely false

10.

foundation. The foundation of the bill is that the bond in suit was secured by a mortgage, and has been paid out of the proceeds of the sale of the mortgaged premises; while the truth is, if the evidence taken in the action at law is true, that the bond in suit was not secured by a mortgage, but is an entirely different instrument, and has not been paid either in whole or in part.

With the material facts of the case in this condition, it is manifest, as I think, that the complainant has no right, at least at this time, to have the litigation respecting the bond withdrawn from the court in which the defendant's action is pending and transferred to this court. There can be no doubt, however, that this court has power, in a proper case, to decree that a bond or other instrument shall be surrendered for cancellation, even though a successful defence may be made at law against a recovery on it. The rule which controls the action of the court in such cases, as stated by Chancellor Williamson, in *Cornish* v. *Bryan, 2 Stock. 146, 151,* is this: " The mere fact that the ground upon which the jurisdiction of this court is invoked may avail the party in an action at law, and constitutes a valid defence by plea or otherwise, is not a sound objection to the court's exercising this power. If a party holds an obligation which ought to be canceled, and persists in holding it for the purpose of harassing the obligor with a suit, he ought not to be permitted to select his own place, time and circumstances for such prosecution. Where a suit at law has been commenced, and the defence at law is complete, then that is a good objection for this court's refusing to change the forum of the litigation. Where, too, the defence is of a character plain and palpable, and within the command of the party at any time, this court ought not to encourage a resort to an expensive litigation in a court of equity. In all cases the court must exercise a sound discretion, and be regulated in its action by the propriety of the particular case before it." The other cases in this state in which the same power invoked here has either been granted or denied, are *Metler's Admrs.* v. *Metler, 3 C. E. Gr. 271; S. C. on appeal, 4 C. E. Gr. 457; Smith* v. *Smith's Admr., 3 Stew. Eq. 567; Ellicott* v. *Chamberlin, 10 Stew. Eq. 470; S. C. on appeal, 11 Stew. Eq. 604.* The case

Chase *v.* Chase.

last cited furnishes an apposite illustration of what facts or circumstances will induce a court of equity to decline to interfere or to assume jurisdiction. In that case an action at law had been brought to enforce the payment of a promissory note founded on an illegal consideration. The consideration constituted part of the price that the drawer had agreed to pay the payee for abandoning a trust or renouncing an executorship. After the suit at law had been commenced, the drawer filed a bill in this court to restrain its further prosecution, and also asking that a decree be made directing the surrender of the note for cancellation. The court of errors and appeals held that the contract, out of which the note arose, was illegal, because opposed to public policy, and, consequently, that the note itself was invalid, but declined to direct its surrender for cancellation, stating, as the reason for its judgment, that the defence to the note could be made in a court of law, and, therefore, the suit in the circuit court, already commenced, should not be enjoined. This decision plainly rests on one of the principles laid down by Chancellor Williamson, in *Cornish* v. *Bryan,* namely, that where the matter is already in litigation in a court of law, and the defence at law is complete, the forum of the litigation will not be changed. Indeed, there is no reason for a change in such a case, for justice may be fully and completely done in the tribunal having priority of jurisdiction. If, under such circumstances, a change were made, the obvious effect of it would be to allow the complainant capriciously to oust the court having rightful prior jurisdiction, and to select his own tribunal simply for the purpose of prolonging the litigation at a greatly increased expense.

No argument is required to show that this principle must control the decision of this case. The complainant's claim is that the bond in suit should be surrendered for cancellation because it has been paid, and he shows, clearly and satisfactorily, that a bond, identical in every point with the bond in suit, and, accompanied by a mortgage, was, years ago, paid out of the sale of the mortgaged premises. The payment of that bond, so far as it was intended as a security or protection to the obligee against his liability as the endorser of two notes, is an undisputed fact.

But the defendant says, and has proved in the action at law, that the bond in suit is not that bond, but another and different instrument resting on an entirely different consideration. This fact stands wholly uncontradicted by any direct evidence on the part of the complainant. So that if, in considering the case here, it is looked at in the light of the evidence taken in the action at law, it would appear, at least at the first glance, that the very foundation of the complainant's case is swept away. The complainant contends, however, that the evidence taken in the action at law, is, in its most essential parts, so unnatural and improbable as to be unworthy of belief. If this were conceded to be true, still no reason would exist for changing the forum of the litigation. The credibility of witnesses and the force and weight of evidence are matters which, by our system of jurisprudence, are committed, in litigations which are the proper subjects of common law cognizance, to the exclusive determination of a jury. As was said by Lord Selborne, in *Hoare* v. *Brenridge, 8 Ch. App. Cas. 22, 28:* "We are bound to take notice that, according to the ordinary course of law in this country, and having regard to the principles upon which trial by jury is established, the jury is not only the most usual, but the most suitable and proper forum for the trial of questions of this description." It seems to me to be clear, beyond all dispute, that, according to well-established principle, this court should not withdraw from trial by jury, in any case, such a question as is involved in this case, except it is manifest that the matter in contest cannot be determined, so as to do full and complete justice, without applying some principle of equity jurisdiction which the common law court cannot apply. Nothing of that kind appears in this case.

There is another reason why this court should not take jurisdiction of this litigation. The defendant has taken a part of her evidence in the action at law. She has a right to use that evidence in that suit, but not in this. It was not taken in this suit, and, indeed, could not have been, for the witness examined in the suit at law died more than two months before this suit was brought. His evidence cannot, therefore, be used in this suit, except by the consent of the complainant or pursuant to an order

Chase *v.* Chase.

of the court. The court might, I think, in a case situated as this
is in respect to a material part of the evidence which should con-
trol its decision, and where it was manifest that justice could
not be effectually done without applying some principle of equity
jurisprudence, make it a condition upon which it would take
jurisdiction, that the complainant should consent that the evi-
dence taken in the action at law should be treated and considered
as also taken in the cause pending here, but there is nothing in
this case to justify such an order. The case is without a single
equitable element. The complainant, however, offers to consent
that the evidence taken in the action at law may be used here.
The defendant is under no duty, in a case like this, to accede to
this offer. She is not under the least obligation to assist the
complainant in procuring a change of forum. On the contrary,
it is her right to do what she can to prevent such change from
being made. The case being one of pure common law cogni-
zance, unaffected by a single equitable consideration, the defend-
ant has a clear right to have it heard and determined according
to the course of the common law.

The injunction must be dissolved. Whether the bill should
be retained to await the determination of the action at law, in
order that the complainant may then, if successful in that suit,
apply on supplemental bill for a decree directing the surrender
of the bond, is a question which has not been fully considered.
That is the course which appears to have been pursued in *Mur-
shaw* v. *Jordon, 3 Bro. Ch. C. 18 n.*