On December 3d 1924, duplicate copies of the following paper-writing were signed:
"JERSEY CITY, N.J., December 3rd/24.
Received from Joseph Pazen, twenty-five and 00-100 dollars, being rent on account for month of February, 1925, for store in English Building, known as 109 Sip Av., Jersey City, N.J. Hereby rented to Joseph Pazen by Morgan Realty Company for five years and three months from Feb. 1st, 1925, at two hundred and fifty and 00-100 dollars per month payable on the first day of each and every month.
 MORGAN REALTY CO., R.W.A. ENGLISH, Pres.
JOSEPH PAZEN."
My consideration of the pleadings and proofs in the case subjudice actuates me in determining that the complainant is entitled to the relief prayed for. The evidence supports the complainant's insistment that the aforesaid paper-writing was intended to be merely preliminary to a formal agreement to be thereafter entered into between the complainant and defendant. *Page 35 
Notwithstanding that said paper-writing recites the renting of a "store in English Building, known as 109 Sip Av., Jersey City, N.J.," the proofs evidence that there was no "store" to which such recital could apply. On December 3d 1924, the "English Building" was undergoing reconstruction. The ground floor of said building, which plans show was to be utilized for business stores, was not partitioned so as to show the dimensions of the several stores contemplated. The defendant had been in occupancy of a store in said building prior to condemnation proceedings initiated and prosecuted by Jersey City, which necessitated his removal therefrom, and he negotiated with Dr. English, president of the complainant, for the renting of a store space at the Bergen and Sip avenue corner of the building as reconstructed. Notwithstanding the ground floor of said building had not been partitioned so as to clearly define the dimension of the store space to be allotted to the defendant, he urges (and his counsel, in a memorandum submitted to the court, likewise urges) that it was the understanding and intention of himself and the complainant that he should have a store "which would have a frontage on Bergen avenue of about seven feet, but not less than six and one-half feet, and at least twenty-one feet on Sip avenue, a depth of at least sixteen and one-half feet, and a width in the back of at least twenty-four and one-half feet." In the answer filed by him in this cause (paragraph 4), he says: "It was distinctly understood and agreed by and between the complainant and the defendant that the said store should have a frontage of at least twenty (20) feet, eight (8) inches on Sip avenue, and a frontage of at least six and a half (6 1/2) feet on Bergen avenue, a depth of at least sixteen and a half (16 1/2) feet, and a width in the back of the said store of at least twenty-four and a half (24 1/2) feet." The variances in dimensions aforesaid show that the defendant was not certain as to the particular space to be allotted to him. The complainant denies that any agreement was entered into or contemplated for the renting of a store of the dimensions aforesaid. The complainant urges that the "store" which was to be *Page 36 
rented to the defendant was to have a frontage of approximatelyfive feet three inches on Bergen avenue. That there is much contradictory evidence as to what the agreement was intended to be with respect to the matter in controversy is conceded by counsel for the defendant, who, in a memorandum submitted to the court, says: "In this action there is a direct conflict of testimony, and it is for the court to decide who to believe."
It appears to me that the complainant's version of the transaction must be considered as the true version thereof, particularly inasmuch as it is sustained by what I regard as the greater weight of the evidence.
The proofs disclose that the aforesaid paper-writing of December 3d 1924, was signed as a result of negotiations previously had between the parties. In behalf of the complainant it is said — and I believe the fact to be — that said paper-writing was intended merely to be in the nature of a receipt for a deposit made by the defendant to pre-empt the renting of the "store" referred to. The testimony of Dr. English, president of the complainant, and of Miss Green, its secretary, is strongly indicative thereof. Dr. English testified: "Pazen asked me to give him a receipt for $25 deposit on account of rent. I gave him this receipt, and told him that we would have a lease for the property ready for him the following day which we could both sign." This testimony is corroborated by Miss Green, who also testified that when the defendant handed to Dr. English his check for $25, Dr. English handed said check to her and said, in the presence and hearing of the defendant: "Write a receipt for Mr. Pazen for this $25 on account of rent," and thereupon the paper-writing in question, and a carbon copy thereof, were made by her at the dictation of Dr. English, in the presence and hearing of the defendant, and signed by the defendant, and by Dr. English in behalf of the complainant.
That the paper-writing in question was not intended as the final agreement between the parties is manifested, to some extent, by the fact that the defendant called three times at the office of the complainant on December 4th, 1924. On *Page 37 
his first visit he obtained from Dr. English duplicate copies of a proposed lease, which he asked leave to take to his attorney, which privilege was accorded him. On his second visit he informed Dr. English that his lawyer suggested that he request the complainant to insert in the proposed lease several provisions, which he then submitted to Dr. English, in typewritten form, and Dr. English, after reading same, made known to the defendant that the complainant would not accede thereto. It also appears that upon the defendant's second visit he stated to Dr. English that a store width of five feet three inches on Bergen avenue would not be sufficient for his purpose, that he had been talking to his architect, who informed him that he ought to have at least seven feet, and Dr. English then informed him it would be impossible to give him seven feet of frontage on Bergen avenue. While such was denied by the defendant, its verity is manifested by the testimony of Dr. English and Miss Green.
On the defendant's third visit, Dr. English observed a penwriting diagram upon the copy of the paper-writing bearing date December 3d 1924, which was in the possession of the defendant. There was no such diagram upon the duplicate copies of such paper-writing when signed and delivered. That such diagram was placed by the defendant on the copy of the paper-writing which he had in his possession after the signing thereof by the parties is not only indicated by the proofs, but the defendant's answer to the bill expressly says said diagram was placed on such paper-writing after it was signed. It appears, too, that the defendant had written the word "sellar" upon said diagram, as indicative of some right which he intended to claim for a cellar space as appurtenant to the "store" to be rented to him, though there is not the slightest proof in the case that the defendant was to be entitled to any cellar space whatever.
Though several conversations were had between the defendant and Miss Green subsequent to December 4th, 1924, no formal lease was executed by the parties. The defendant's counsel says that the "law form" of the lease was not signed because Dr. English, in behalf of the complainant, only wanted *Page 38 
to give five feet three inches frontage on Bergen avenue, and the defendant insisted that he wanted six and one-half feet frontage on Bergen avenue. The so-called "law form" of lease evidences that it was signed by Dr. English on behalf of the complainant, though not signed by the defendant.
The defendant claims that the paper-writing in question is a complete instrument, evidencing the renting to him of a store in the English Building, 109 Sip avenue, Jersey City, yet he also claims that he considered said paper-writing to be an agreement for a lease, the terms of which were definitely settled by said paper-writing. If he regarded such to be the fact, it is not likely he would have requested Dr. English to have inserted in the proposed lease, which was submitted to him on December 4th, 1924, the several provisions which his lawyer prepared and gave to him for incorporation therein.
The defendant, in an answering affidavit filed by him in this cause, which was offered in evidence, says: "It was understood that we would enter into a formal lease." In paragraph 5 of the defendant's answer to the bill of complaint he says: "At the timeExhibit A" (referring to the aforesaid paper-writing) "was signed by the complainant and the said defendant, it was stated and understood that a formal lease should be prepared by the complainant, which lease should be signed by the complainant and the defendant, and which lease should embody and contain the terms of the agreement." In paragraph 4 of the defendant's aforesaid answer he says: "The complainant and defendant entered into an agreement for the lease of the said store, a copy of which agreement is partly set forth in Exhibit A" (referring to the aforesaid paper-writing).
In the memorandum submitted to the court, counsel for the defendant says: "At the time that this agreement was signed, the various partitions in the stores of the altered building had not yet been set and placed," * * * "Ordinarily, the size of the store leased would not have to be put in the lease, but on account of the fact that the partitions were not set in the altered building, and the size of the store *Page 39 
was not definite at this time, it was important that there be no misunderstanding as to the size of the store * * * and Mr. Pazen requested that it be put in the `law form' of the lease."
Counsel for the defendant, while admitting that a formal lease was to be signed, urged that such formal lease was to contain exactly the same terms, and no other terms, than those set forth in the paper-writing in question. If such were to be regarded as the fact, it would not place the parties in any better position, as to their legal status, than they occupy at the present time, under the paper-writing in question. The fact, however, that the defendant endeavored to persuade the complainant to insert in the proposed lease submitted to him by the complainant, the provisions (several typewritten pages) prepared in his behalf by his lawyer, is repugnant to his claim in this respect. He refers to the case of Wharton v. Stoutenburgh, 35 N.J. Eq. 266,
wherein the court says: "As soon as the fact is established of the final mutual assent of the parties to certain terms, and those terms are evidenced by any writing signed by the party to be charged, or his lawfully authorized agent, there exist all of the materials which the court requires to make a legally binding contract." The court, in the same case, says: "The fact that parties negotiating a contract contemplated that a formal agreement should be prepared and signed, is some evidence that they did not intend to bind themselves until the agreement was reduced to writing and signed, but, nevertheless, it is always a question of fact, depending upon the circumstances of the particular case, whether the parties had not completed their negotiations and concluded a contract definite and complete in all its terms which they intended should be binding, and which, for greater certainty, or to answer some requirement of the law, they designed to have expressed in some formal written agreement."
Counsel for the defendant also refers to the case ofMcCulloch v. Lake and Risley Co., 91 N.J. Law 381, in which the court says: "When the terms of a lease are agreed upon, and the tenant makes a payment on account thereof, the *Page 40 
contract is complete, even though both parties contemplated the execution of a formal lease." The defendant's case, however, is not, in my judgment, in accord with the law cited in his behalf.
The defendant's complaint in the suit at law against the complainant (annexed to and made part of the complainant's bill in this case), based upon the paper-writing in question, alleges that it was understood that he was to have a frontage of not less than six and one-half feet on Bergen avenue. The proofs in this case do not evidence any such understanding.
If the defendant was now seeking a decree of specific performance of what he regards to be a lease, that is, the paper-writing in question, relief would have to be denied him. To warrant such a decree it would have to be shown that the contract was complete in all its material parts; and when any material part was unexpressed, or left open for subsequent negotiation and determination by the parties, it could not be regarded as a contract. Binns v. Smith, 93 N.J. Eq. 33 (at p. 36);Brown v. Brown, 33 N.J. Eq. 650 (at p. 655); Bettcher v.Knapp, 94 N.J. Eq. 433; Quinn v. Amendola, 5 N.J. Mis. R. 932;Shaw v. Woodbury, 52 N.J. Law 7. Where, as in this case, the parties, in my judgment, intended the paper-writing in question merely as a receipt, preliminary to the preparation and execution of a formal lease which was to contain all essential terms, the matter must be said to remain in fieri until the formal lease be executed and delivered. Luskin v. Guttman, 98 N.J. Eq. 617;affirmed, 99 N.J. Eq. 887; Kudtz v. Busch, 3 N.J. Mis. R. 389;Bettcher v. Knapp, supra; Venino v. Naegele, 99 N.J. Eq. 183;Schneider v. Crawford, 99 N.J. Eq. 249; Zukman v. Ihle,99 N.J. Eq. 702.
This court is empowered to restrain the prosecution of the defendant's action at law, in order to cause the paper-writing in question, which is the subject-matter of the controversy, to be surrendered and canceled (Metler ads. Metler's Admr., 18 N.J. Eq. 270; Gallagher v. Lembeck and Betz Eagle Brewing Co.,86 N.J. Eq. 188; Cornish v. Bryan, 10 N.J. Eq. 146; Chase v.Chase, 50 N.J. Eq. 143); "and the mere *Page 41 
fact that the ground upon which the jurisdiction of this court is invoked may avail the party in an action at law, and constitutes a valid defense by plea or otherwise, is not a sound objection to the court's exercising that power" (Chase v. Chase, supra (atp. 146) — particularly where, as in this case, equitable elements are involved which the law court cannot adequately apply, and which must be applied in order that full and complete justice may be done.
In Cornish v. Bryan, supra (at p. 151), the court says: "This court has the power to order a bond or other instrument to be delivered up to be canceled, whether such instrument is or is not void at law, or whether it be void on the face of it, or by matters shown by proofs in the cause; but the exercise of this power rests in the sound discretion of the court, and is regulated by the circumstances of each particular case."
I will advise a decree granting to the complainant the relief prayed for.