Mary Reeves died January 19th, 1927, leaving her surviving four children, the complainants, the defendant and Israel Reeves. On February 2d 1927, letters of administration were granted to the complainants by the surrogate of Hudson county on the goods and chattels, c., of the above-named decedent, who at the time of her death had an account in The Liberty National Bank of Guttenberg, New Jersey, of $2,142.10, evidenced by a pass-book issued in the names "Mary Reeves or William Reeves." A signature-card, on file in said bank, evidences that the moneys representing the aforesaid account were deposited by "Mary Reeves" on February 5th, 1926. The face of said card reads "Mary Reeves or William J. Reeves." The cashier of said bank testified *Page 438 
that when Mary Reeves opened said account she informed him that she wanted to open a joint account in the name of herself and her son, but did not mention the son's name. He says he prepared the card, had her sign her name thereto, and then, at her request, added after her name the word "or," after which he handed the card to her and she took it away. When the card was returned to him some time later the name "William J. Reeves" appeared thereon. The card does not bear any writing or printed matter which in anywise indicates that the account in question was intended to be a joint tenancy or that either of the parties, "Mary Reeves or William J. Reeves," were privileged to withdraw moneys from said account. At the top of the card is printed "The undersigned agrees to the by-laws, rules and regulations of The Liberty National Bank, Guttenberg, N.J." Rules and regulations are printed in the pass-book, among which are the following: "The pass-book shall be the voucher of the depositor and must always be presented when depositing or withdrawing money." * * * "Acceptance of this book shall be considered an assent to these rules and regulations." The proofs evidence that Mary Reeves withdrew moneys from said account on several occasions, on warrants signed by herself, and that the defendant, prior to the death of his mother, did not make any deposit in or withdrawal from said account. After letters of administration were granted upon the estate of said Mary Reeves to the complainants, the defendant withdrew the balance remaining in the account notwithstanding he attended with the complainants at the surrogate's office when application was made by them for letters of administration, and they, to his knowledge, represented to the surrogate that the entire estate of Mary Reeves consisted of the moneys represented by the aforesaid account. If Mary Reeves intended to create a joint tenancy as between herself and the defendant such could readily have been manifested by said parties placing their signatures under the printed matter on the back of the signature-card, in the place provided for such a purpose: *Page 439 
 "JOINT ACCOUNT AGREEMENT.
This account and all money to be credited to it belong to us as joint tenants, and will be the absolute property of the survivor of us; either, and the survivor to draw. We do each appoint the other attorney irrevocable, with power to deposit in said joint account, moneys of the other, and for that purpose to endorse any check, draft, note or other instrument payable to the order of the other.
 ............................. Date ............................. ..................................."
By way of explanation as to the circumstances attending the writing of his name upon said card the defendant testified that his mother brought the card home (he resided with his mother) and informed him that she had withdrawn moneys from the Guttenberg bank (referring, apparently, to The Guttenberg Bank and Trust Company); that she wanted him to sign the card, and the account to be the same as it was in said bank. His story is uncorroborated. If it was the purpose of the defendant's mother that the moneys deposited by her in The Liberty National Bank of Guttenberg should be as the account was in The Guttenberg Bank and Trust Company, and the defendant understood the purpose so to be, I am at a loss to understand why he and his mother did not see to it that the account in The Liberty National Bank was opened in the way the account had been opened and maintained in The Guttenberg Bank and Trust Company.
The proofs show that The Guttenberg Bank and Trust Company account which was referred to by the defendant was in the name of "Mary Reeves or William Reeves, payable to either or survivor," the words "payable to either or survivor" being stamped upon the pass-book issued by said institution, though no proof was adduced to show that such words were stamped thereon at the direction of Mary Reeves. The face of the signature-card relating to said account reads "Mary Reeves or William Reeves, payable to either or survivor;" the back of the card reads:
"This account and all money to be credited to it belong to us as joint tenants, and will be the absolute property of the survivor of us; *Page 440 
either, and the survivor to draw. We do each hereby appoint the other attorney irrevocable with power to deposit in said joint account, moneys of the other, and for that purpose to endorse any check, draft, note or other instrument payable to the other.
 MARY REEVES. WILLIAM REEVES."
It was urged in behalf of the defendant that the opening and maintenance of the account in the latter institution, in the manner aforesaid, created a relationship which should be regarded as evidential of a similar relationship between Mary Reeves and the defendant as to the account opened and maintained in The Liberty National Bank of Guttenberg. It is clearly manifest that the two accounts are not analogous. Even though the pass-book and signature-card relating to the account in The Guttenberg Bank and Trust Company were to be regarded as evidential for the purpose of this case (and I do not regard such to be in anywise evidential), they could not serve to enlighten the court as to the intention of Mary Reeves to create a joint tenancy in the account opened by her in The Liberty National Bank of Guttenberg.
If The Guttenberg Bank and Trust Company account were to be regarded as evidential for the purposes of this case it would be strongly indicative, in my judgment, that Mary Reeves intended by her act in withdrawing all of the moneys from said account to put an end to the joint tenancy created by said account.
There is no proof as to who retained custody of the pass-book of The Liberty National Bank of Guttenberg from the time the account was opened by Mary Reeves to the time of her death, though the proof discloses that she withdrew moneys from said account, on several occasions, which fact, in view of the rules and regulations of the bank hereinabove referred to, is indicative that she had the book in her possession and presented same to the bank when withdrawing moneys from the account. The cashier testified also that the solicitor of the defendant delivered to him the pass-book aforesaid, thus warranting payment by the bank to the defendant of the balance remaining to the credit of said account to which said book related. See P.L. 1907p. 75; *Page 441 1 Comp. Stat. p. 178 § 43: "When a deposit has been made, or shall hereafter be made, in any bank or trust company transacting business in this state in the name of two persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons whether the other be living or not." The evident purpose of said act is merely to protect the bank from liability upon its making payment to either of the parties presenting to it the pass-book. Gordon v. Toler,83 N.J. Eq. 25, 28. No proof was adduced as to when, or from whom, or under what circumstances, the defendant's solicitor obtained said pass-book. For aught the court knows, in the absence of proof, it may be that the defendant at the time of his mother's death found the book among her personal effects and delivered same to his solicitor, assuming his right so to do because of the fact that his name was coupled with the name of his mother in said book. It is urged in behalf of the defendant that the court should infer that the defendant's solicitor received same from the defendant, and that the latter came by the book lawfully. In view, however, of the defendant's claim to the moneys in question as a gift inter vivos, as set up in his answer, and urged upon the hearing of the cause, the defendant, in my judgment, should affirmatively show, by adequate proof, that said book came lawfully to his possession, particularly if he relies upon his possession of the book as indicative of delivery to him by his mother of that which controls the subject-matter of the alleged gift, and in view also of the fact that his mother must be regarded as having had possession of said book when she made withdrawals from the account.
To sustain a gift inter vivos, which is the basis of the claim of the defendant in this case, there must be not only a donative intention, but, in conjunction with it, a complete surrender by the donor of all control over the thing given.Wright v. Sanger, 101 N.J. Eq. 203; Stevenson v. Earl,65 N.J. Eq. 721 (at p. 725); Matthews v. Hoagland, 48 N.J. Eq. 455
(at p. 485).
Where, as in this case, the moneys belonging to Mary Reeves were deposited by her in The Liberty National Bank of Guttenberg, *Page 442 
merely in the name "Mary Reeves or William Reeves," the question whether or not such act of deposit accomplished a then present transfer to the alleged donee, William Reeves, of an interest in the moneys so deposited, is dependent upon the intent with which the alleged donor, Mary Reeves, made such deposit. And where, as in this case, the signature-card was merely signed by Mary Reeves and William Reeves, with no direction on the card with regard to the account, such form of deposit does not, in itself, constitute the alleged donee a joint owner of the fund.Commercial Trust Co. of New Jersey v. White, 99 N.J. Eq. 119;affirmed, 100 N.J. Eq. 561; McCullough v. Forrest, 84 N.J. Eq. 101; Morristown Trust Co. v. Capstick, 90 N.J. Eq. 22;affirmed, 91 N.J. Eq. 152. It appears from the proofs in this case that the moneys deposited by the defendant's mother in the account aforesaid represented her entire estate, and the burden of proof therefore devolves upon the defendant to overcome the presumption of improvidence raised thereby. Hunt v. Naylor,84 N.J. Eq. 646, 651; see, also, In re Fulper, 99 N.J. Eq. (atp. 302). The defendant's claim of gift inter vivos has not been substantiated. At the conclusion of the hearing the defendant's solicitor moved for a dismissal of the complainants' amended bill upon the ground — (1) want of equity; (2) that complainants had an adequate remedy at law. I stated at said time that such application, in my judgment, should not be granted, particularly for the reason that the case was heard upon its merits; the same grounds were again urged in a memorandum submitted to me. The clerk's file manifests that the solicitor of the defendant gave notice, in limine, that he would apply for an order to strike the bill of complaint for the reason: "The said bill of complaint discloses no cause of action cognizable in the court of chancery, and defendant contends that the same is objectionable for want of equity." Said file does not contain any order or other paper evidencing the disposition made of said application. I assume, therefore, and so stated to the defendant's solicitor at the hearing, that his application for order to strike the bill must be regarded as having been abandoned. Furthermore, *Page 443 
the defendant's answer does not in anywise question the jurisdiction of the court in the premises. If, as indicated by the memorandum submitted to the court by the solicitor of the defendant, the ground relied upon as to this court's lack of jurisdiction is that the complainants have an adequate remedy at law for money had and received by the defendant for the use of the complainants, which, in its nature, is really an equitable action, though jurisdiction over it has grown up in the law courts, no such ground was urged until after the conclusion of the hearing of the cause.
This court should not, in my judgment, after the trial of the cause on its merits, dismiss the bill of complaint upon the ground assigned therefor, thus rendering the litigation in this court abortive, and relegate the parties to a suit at law (Roe
v. Mayor and Aldermen of Jersey City, 80 N.J. Eq. 35, 37), particularly where, as in this case, the defendant's alleged right to the moneys in question — a gift inter vivos may be adequately adjudicated in this court where such questions are frequently adjudicated. In Knikel v. Spitz, 74 N.J. Eq. 581,
this court held that in the absence of objection in limine that the remedy at law is adequate equity will exercise its jurisdiction unless of its own motion it sees fit to remand the parties to a court of law; that a demurrer to a bill on the ground of want of equity is too indefinite to raise the objection that the remedy at law is adequate; that the defendant, by refraining at the first opportunity from raising the objection to the exercise of jurisdiction by this court, which objection, if sustained, would compel the complainant to commence his litigation over again in another court, may well be deemed to be stipulating or assenting to the proposition that the remedy at law is not adequate, and that therefore the complainant's case should be disposed of by the exercise of the jurisdiction of this court. In Cornish v. Bryan, 10 N.J. Eq. 146, 151, it is said the mere fact that the grounds upon which the jurisdiction of this court is invoked may avail the party in an action at law is not a sound objection to the court's exercising its jurisdiction. See, also, Chase v. Chase, 50 N.J. Eq. 143, 146; Seymour v.Long Dock Co., 20 N.J. *Page 444 Eq. 396. The defendant's objection to the jurisdiction of the court on the ground that there is an adequate remedy at law is not such that he is entitled to have it allowed at any stage of the cause. Such objection, to be available to him, should have been taken by motion to strike the bill or insisted upon in the answer. While this court may, of its own motion, dismiss a bill at any stage of the cause, on the ground that the complainant has an adequate remedy at law, nevertheless, where, as in this case, the defendant has not raised objection until after the cause has been fully heard on its merits, the court, within its discretion, should retain the cause. The Lehigh Zinc and Iron Co. v.Trotter, 43 N.J. Eq. 185, 204; McCran v. Western Union Tel.Co., 94 N.J. Eq. 281, 290. Having experimented and been beaten on the merits the defendant will not be permitted to raise the question of jurisdiction at the hearing. Feigenspan v.Nizolek, 71 N.J. Eq. 382, 391; Cutting v. Dana, 25 N.J. Eq. 265,273. In Polhemus v. Holland Trust Co., 61 N.J. Eq. 654,
the court of errors and appeals held that a defendant who answers fully, on the merits, a bill in chancery, submits to the jurisdiction of the court. Being of the opinion that this court, under the facts and circumstances aforesaid, should retain jurisdiction of the matter sub judice and determine the same upon its merits, I will advise a decree adjudging that the sum of money ($2,142.10) withdrawn by the defendant from The Liberty National Bank of Guttenberg belongs to the estate of Mary Reeves, deceased, and requiring same to be paid, plus accrued interest thereon from the date of withdrawal, by the defendant to the complainants. As to the complainants' claim for $193.44, representing moneys paid to the defendant by an insurance company on a policy of insurance issued on the life of the decedent, Mary Reeves, no proof has been adduced to warrant the court to require payment of said moneys to the complainants, and I will advise that the bill, as to such claim, be dismissed. *Page 445