CHAPIN PUBLICITY COMPANY, complainant-appellant,

*v.*

SAYBROOK HOLDING CORPORATION, defendant-respondent.

[Submitted February 15th, 1929. Decided October 14th, 1929.]

216

[redacted]

*Mr. Joseph Kraemer,* for the appellant.

*Mr. Irwin R. Heller,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The prayer of the bill was for judicial cancellation of a written lease and for the return of rents paid in advance thereon and injunction against claim of further rents, on the ground that the execution of the lease by complainant had been procured through fraud of the defendant. The vice-chancellor held that no fraud had been made out. We conclude to the contrary.

Defendant corporation was owner or tenant for years of a tract of land on the westerly corner of Park Place and Saybrook Place, in Newark, and of a row of one-story stores thereon; and the complainant desired to lease the privilege of erecting and maintaining on the roof of these stores two large advertising clocks supported by steel frames. It was perfectly clear on the evidence for the complainant, on which the defendant rested without offering any evidence to meet it, that Silverman, the president of defendant corporation, was fully aware that this row of buildings had been listed by the building department of the city as unsafe for the support of any structures such as the complainant wished to install upon them, and that he had been informed personally by the

superintendent of the department that no permit for a roof sign would be granted because of that structural weakness. It was also in evidence that on at least one previous occasion another concern had leased the roof for a similar purpose and had been refused a permit, and Silverman had been so notified by the department. But notwithstanding these facts, the evidence also shows, likewise without contradiction, that when the complainant, through its secretary Williamson, opened negotiations over the telephone with Silverman at his office in New York City to secure the lease and arrange the terms, Silverman requested Williamson "to draw the draft of a lease for the reason that he had never received previously or entertained any proposition for the leasing of roof signs;" and that Williamson thereupon proceeded to draft the lease, which was later executed according to his draft. Silverman was not present when it was executed by complainant, but it had already been fully executed by defendant when submitted to complainant to execute, at Silverman's office. It is a lengthy document containing the usual covenants and conditions, and describes the demised premises as "two locations on roof of building generally known," &c., "these locations to provide for installation of two advertising clocks of designated locations and position of steel frame erection, as per hereto attached" (referring to a rough diagram annexed to the paper) * * * "to be used and occupied solely for the erection of two advertising clocks." There is a later provision that in case defendant at any time substitute a garage for the stores, complainant will "take down the clock(s) and re-erect same upon the roof of garage at their own expense."

We have therefore the following fundamental facts:

1. That defendant, through Silverman, knew the roof had been condemned as unfit to support a sign and that permits for that purpose had been refused and would be refused.

2. That nevertheless, Silverman was willing to make a lease to complainant and to take its money while omitting to mention fact No. 1.

3. That furthermore, Silverman falsely stated to complainant that he had never had any proposition for a roof sign

and wished complainant to draft the part of the lease covering that point.

4. That with the above knowledge and after making this false statement, Silverman received from complainant the drafted lease, read and executed it in solitude and presumably at leisure, and left it at his office for delivery to and execution by complainant.

To cap this fraud—for fraud it was—Silverman assumed the role of an innocent and surprised owner when it promptly appeared, after six hundred dollars of rent had been paid in advance, that a permit for erection of the signs could not be had. Williamson called up Silverman on the telephone; Silverman expressed righteous indignation and referred Williamson to defendant's counsel, who went with Williamson to the city hall, and for about ten days there were efforts to secure the permit, but they were futile, and finally defendant's counsel washed his hands of the matter. Then Silverman himself came to Newark at Williamson's request, but was evasive, and even disclaimed knowledge that the lease called for "an all steel structure" though according to Williamson's testimony, which Silverman did not take the stand to contradict, he then had the paper in his pocket and accidentally dropped it on the floor. The lease contains the words "of steel frame erection," as noted above.

All this, of course, occurred after the lease had been executed, but it is relevant as corroborative of the fraud practiced in inducing complainant to enter into the lease. The general rule that on a demise of a house or lands there is no contract or condition implied that the premises shall be fit and suitable for the use for which the lessee requires them, is firmly settled in this state. *Murray* v. *Albertson, 50 N. J. Law 167; Clyme* v. *Helmes, 61 N. J. Law 358; Whitcomb* v. *Brant, 76 N. J. Law 246;* but *Murray* v. *Albertson* is likewise authority for the proposition that the tenant is justified in refusing to pay rent, and in abandoning the premises where there has been fraudulent misrepresentation or concealment by the lessor as to the state of the premises which were the subject of the letting, and this was reiterated by this court

in *Goldberg* v. *Reed, 97 N. J. Law 170.* In the case at bar, fraudulent concealment prior to the contract, if not indeed active fraudulent misrepresentation, is clearly indicated by the evidence. No question of the scope of Silverman's agency for defendant is suggested. That the landlord knew the precise purpose of the tenant is shown by the very language of the lease, which in fact forbids use for any other purpose. That the landlord knew the demised "premises" could not be used for such purpose was shown by the uncontradicted testimony of three or four witnesses not connected with the suit. That the landlord concealed that knowledge not merely passively but actively, is shown by the testimony that Silverman requested Williamson to draft the clauses about a roof sign "because he had never had any application for any roof sign erection, and was not familiar with its terms." This seems to have been a palpable falsehood, and directly calculated to lead the complainant into contracting for a roof privilege which defendant well knew the municipal authority would not permit it to exercise. In our judgment, complainant's right to rescind was and is clear, on the authorities cited; and with that right goes the equitable right to a judicial cancellation of the lease, and a permanent injunction against present and future claims for rent, as part of the complete relief which only equity can afford in such cases; and incidental thereto, a decree for the return of the money already paid, with interest and costs. *Eggers* v. *Anderson, 63 N. J. Eq. 264; Schoenfeld* v. *Winter, 76 N. J. Eq. 511; affirmed, 79 N. J. Eq. 219; Erdmann* v. *Gregg, 90 N. J. Eq. 363; Commercial Casualty Insurance Co.* v. *Southern Surety Co., 100 N. J. Eq. 92; affirmed, 101 N. J. Eq. 738.*

The decree under review will be reversed with directions to enter a decree granting relief as prayed in the bill.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, BLACK, LLOYD, CASE, KAYS, JJ. 6.

*For reversal*—PARKER, KALISCH, CAMPBELL, BODINE, WHITE, VAN BUSKIRK, McGLENNON, HETFIELD, DEAR, JJ. 9