The motion to strike the bill of complaint is based upon five separate and distinct grounds, all of which may be combined into the contention that the bill does not state an equitable cause of action and that this court is without jurisdiction to entertain the bill because complainant has an adequate remedy at law. The bill seeks the rescission and cancellation of a certain contract and policy of life insurance issued by the complainant company on the life of one William H. Baker, the president of the defendant corporation, on the ground that it was obtained by fraud. There is also a prayer for an injunction against the assignment of, or action at law on, said policy.
The bill alleges that complainant was induced to issue its policy by the false and fraudulent statements of fact by the insured which they believed were true and upon which they relied; that if the insured had truthfully answered the medical examiner's questions the complainant would have declined to issue the policy; that the insured was not in good health at the effective date of the policy and that the policy is, therefore, void. Facts constituting the alleged fraud are set out in detail and if true there can be no question as to complainant's right to relief. The bill also alleges that the policy contained a two-year incontestability clause; that no action at law on said policy is pending; the death of the insured on May 13th, 1932, and proof thereof; tender to the defendant of all premiums paid with accrued interest, refusal of such tender and complainant now tenders payment of such sum into court.
On this motion all facts well pleaded are admitted by the defendant.
The argument in support of this motion is that the fraud alleged in the bill may be pleaded in defense to an action at law on the policy, and, if proved, would bar any recovery thereon; and that the remedy at law, therefore, being complete, this court has no jurisdiction. In other words, since complainant alleges legal or conscious fraud, instead of equitable fraud, unwittingly committed, it is entitled to *Page 168 
relief only in a legal forum. In support of this argument the defendant cites Metropolitan Life Insurance Co. v. Sussman,109 N.J. Eq. 582; Shapiro v. Metropolitan Life Insurance Co.,110 N.J. Eq. 287, and section 94 of the Insurance act (P.L.1907 p. 136, as amended P.L. 1925 p. 436; Cum. Supp. Comp.Stat. p. 864). Under these authorities it is insisted that contracts of life insurance are distinguished from all other contracts in that relief from their apparent obligations cannot be had except upon proof of conscious, or legal, fraud, and that having alleged such fraud in its bill, the complainant has ousted itself from this court. If this is true it marks a radical departure from equitable jurisdictional procedure heretofore maintained in this court.
This court has inherent jurisdiction in all cases involving fraud. Eggers v. Anderson, 63 N.J. Eq. 264; CommercialCasualty Insurance Co. v. Southern Surety Co., 100 N.J. Eq. 92;affirmed, 101 N.J. Eq. 738. Its jurisdiction is co-extensive with that of the court of chancery of England as it existed at the time of the adoption of our first constitution on July 2d 1776. Pat. L. 38. In fact, the court of chancery of this state has exercised such jurisdiction since the adoption of Lord Cornbury's ordinance establishing a high court of chancery in 1705, although it is from the ordinance of Governor Franklin adopted in 1770 that our court of chancery, as it exists today, derives its jurisdiction and powers. See 19 N.J. Eq. 577; In reVice-Chancellors, 105 N.J. Eq. 759. "New Jersey is distinguished from her sister states by her adherence to the standard of the mother country respecting both rights and remedies in equity."Eggers v. Anderson, supra. See, also, Hubbard v.International Mercantile Agency, 68 N.J. Eq. 434; Dawson v.Leschziner, 72 N.J. Eq. 1; Mazzolla v. Wilkie, 72 N.J. Eq. 722.
In fraud cases there can be no question of jurisdiction in this court, but only as to the propriety of its exercise. The L.Martin Co. v. L. Martin Wilckes Co., 75 N.J. Eq. 39
(reversed, Ibid. 257, but this rule not affected). The existence of a complete defense at law, in fraud cases, has never been considered a bar to the exercise *Page 169 
of this ancient jurisdiction by the court of chancery, because "mere defense, however perfect, is not relief" (Smith-AustermuhlCo. v. Jersey Railways Advertising Co., 89 N.J. Eq. 12) and thus proves an inadequate remedy. New York Life Insurance Co.
v. Steinman, 103 N.J. Eq. 403. In suits to cancel and compel the surrender of written instruments the execution of which by the complaining party was procured by fraud, legal or equitable, this rule has been uniformly applied. Cornish v. Bryan,10 N.J. Eq. 146; Metler's Administrators v. Metler, 18 N.J. Eq. 270; affirmed, 19 N.J. Eq. 457; O'Brien v. The Paterson Brewingand Malting Co., 69 N.J. Eq. 117; Gallagher v. Lembeck BetzEagle Brewing Co., 86 N.J. Eq. 188; Morgan Realty Co. v. Pazen,102 N.J. Eq. 33; Chapin Publicity Co. v. Saybrook HoldingCorp., 105 N.J. Eq. 215; Kunz v. Barnegat Pines Realty Co.,109 N.J. Eq. 115; indeed, almost eighty years ago Chancellor Williamson said that the jurisdiction of this court to order such an instrument to be delivered up for cancellation had then
"been too frequently exercised to be now called into question."Cornish v. Bryan, supra. The reason and "propriety" of its exercise rests upon the more complete and effective remedy in equity. Morse v. Nicholson and Cook, 55 N.J. Eq. 705;Schoenfeld v. Winter, 76 N.J. Eq. 511; affirmed, 79 N.J. Eq. 219; Commercial Casualty Insurance Co. v. Southern Surety Co.,supra; Chapin Publicity Co. v. Saybrook Holding Corp., supra;Smith-Austermuhl Co. v. Jersey Railways Advertising Co.,supra. This jurisdiction has continued to be exercised by this court in suits to cancel policies of life insurance almost to the present moment (Aetna Life Insurance Co. v. Sussman, 111 N.J. Eq. 358;Travelers Insurance Co. v. Evslin (1927), 101 N.J. Eq. 527); and the latest decision of this court in point is ThePrudential Insurance Company of America v. Holmes, 111 N.J. Eq. 115,
decided by Vice-Chancellor Fallon on July 22d 1932. Even in Metropolitan Life Insurance Co. v. Sussman, supra, andShapiro v. Metropolitan Life Insurance Co., supra, cited in support of this motion, the jurisdiction *Page 170 
was exercised, the court apparently entertaining no doubt of its inherent right to do so, although in the Sussman Case a motion to strike the bill was made in this court. Both cases, however, were decided on the merits; and in the Sussman Case the court of errors and appeals made no comment on the motion to strike in the court below. It is not now necessary for me to pass upon the question of the degree or quantum of the proof of fraud which is required in this court in suits of this kind since the enactment of section 94 of the Insurance act, supra; suffice it to say that that act did not, and could not, deprive this court of any of its previous inherent jurisdiction. The purpose of that portion of the act providing that "all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties," seems to be misunderstood by counsel for the defendant. Prior to this enactment life insurance policies were frequently vitiated by misrepresentation, however slight, conscious or unconscious, material or immaterial, on the theory of breach of warranty, and thus an unconscionable advantage was sometimes taken of policy-holders by the insurance companies. In Dewees v. The Manhattan Insurance Co.,34 N.J. Law 244, the distinction between representations and warranties as applied to insurance policies was pointed out by Mr. Justice Depue in the following language:
"In contracts of insurance a representation differs from a warranty, and from a condition expressed in the policy, in that the former is part of the preliminary proceedings which propose the contract, and the latter is part of the contract when completed. The validity of the entire contract depends upon the truth or fulfillment of the warranties and conditions expressed therein; and non-compliance is a breach of the contract which makes it void; but a misrepresentation, to avoid the policy, must have been in a material matter, or have been made with a fraudulent intent."
It was also there held that "conditions of insurance annexed to a policy, and by the terms of the policy made part of the contract, have the same force and effect as if contained *Page 171 
in the body of the policy." And in Carson v. Jersey CityInsurance Co., 43 N.J. Law 300, the same justice said:
"A warranty in a policy of insurance excludes all argument in regard to its reasonableness or the probable intent of the parties. If the policy contains a condition which in law amounts to a warranty on the part of the assured, he can derive no benefit from the policy unless the condition has been literally performed. And it is immaterial to what cause non-compliance is attributable; for, if it be not in fact complied with, the assured will forfeit all his rights under the policy unless the forfeiture has been waived by the insurer."
The act referred to requires the policy to contain the entire contract and the insured's application must be attached to and becomes a part of it. Under these circumstances, and in view of the previous condition of the law as stated above, all "preliminary" statements in the application would, ipso facto, have been converted into warranties the breach of which, however immaterial, would have avoided the policy, except for the statutory provision. It was therefore provided that notwithstanding the inclusion of the application as a part of the contract itself, these "preliminary" statements should still be considered as "representations and not warranties." There was no intent to change the substantive law as to warranties and representations. And note that this provision has no application except "in the absence of fraud." The design of the statute was evidently to put an end to the unconscionable practices of insurance companies in avoiding liability on their policies for immaterial representations which had become warranties under the law as it previously stood. Our statute is a reproduction of the New York act (N.Y.L. 1906 ch. 326), and while I know of no New Jersey decision which construes the word "fraud" as used in our act, I am referred to several New York cases in which the New York act is construed; among them Eastern District Piece DyeWorks v. Travelers Insurance Co. (Court of Appeals, 1923),234 N.Y. 441; 138 N.E. Rep. 401, in which Chief-Justice Hiscock said:
"The result of this provision is that in order to produce a *Page 172 
warranty in an application for insurance whereof a breach would necessarily and ipso facto avoid the policy, the statement claimed to constitute or have the effect of a warranty must be characterized by and include the element of fraud, and which ordinarily would be established by proof that the person making it knew that the statement was false, and wherefrom could be inferred an intent to deceive and cheat. A misstatement, even though stated in the form of a warranty, if made in good faith and without this element of fraud, passed into the same class as an ordinary representation and became a defense to the policy only if it was material. On the other hand, the effect of a misrepresentation was left unchanged by the statute. If material it constituted a defense, although made innocently and without any feature of fraud; it was sufficient that it was material as an inducement for the issue of the policy, and was untrue."
See, also, Minsker v. John Hancock Mutual Life InsuranceCo., 254 N.Y. 333; 173 N.E. Rep. 4.
I am inclined to the belief that our statute was not intended to restrict the avoidance of life insurance contracts on the ground of fraud to those cases in which legal, as distinguished from equitable, fraud could be proved. The word "fraud" as used in the phrase "in the absence of fraud" is all inclusive. It undoubtedly means actual fraud which at law does not exist without moral culpability; but in equity there may be actual fraud "without the knowledge and wrongful intent which constitute the immorality at law." 2 Pom. 1807. The distinguishing element of actual fraud is untruth which at law must be virtually intentional — a falsehood; in equity the intention is not so essential (Ibid. 1933); it will be presumed without proof. The cases cited by Vice-Chancellor Bigelow in the Shapiro Case on the construction of the word "fraud," it will be noticed, were all law cases in which only legal fraud was involved.
In Kerpchak v. John Hancock Mutual Life Insurance Co.,97 N.J. Law 196 (at p. 198), the court of errors and appeals said: "The legal rule is, c." (italics mine), and in Locker
v. Metropolitan Life Insurance Co., 107 N.J. Law 257, the *Page 173 
same court was merely applying the legal rule previously stated. But all classes of fraud are cognizable in this court, and irrespective of whether only "legal," as distinguished from "equitable," fraud may now afford a basis for avoiding a contract of life insurance, the right of this complainant to maintain its bill is not now open to question, at least in this court. NewYork Life Insurance Co. v. Steinman, supra. Vice-Chancellor Leaming there denied a motion to strike a bill of complaint. The motion was based upon the same grounds as those here advanced and the facts alleged in the bill of complaint presented exactly the same question which is now before the court. Counsel for defendant concedes that a bill to cancel may be maintained in the lifetime of the insured and, for this reason, concedes the correctness of the decision of Vice-Chancellor Fallon in ThePrudential Insurance Co. v. Holmes, supra; but in New YorkLife Insurance Co. v. Steinman, supra, the insured had died before the expiration of the period of contestability, which brings the instant case squarely within that decision which I consider dispositive of the present motion. The motion to strike is, therefore, denied.
This same motion is addressed to ten other bills of complaint by other insurance companies, nine of which are against the same defendant, and the tenth of which is against the executors of the insured. (Docket and page numbers 90/668; 90/669; 90/671; 90/672; 90/681; 90/682; 90/692; 90/693; 90/694.) The policies involved in these several suits aggregate $1,000,000. The surrender and cancellation of all of said policies is sought upon the same grounds of fraud. There is no material difference in the terms of the several policies. Some of them contain one year incontestability clauses, others two-year clauses, and two of them no such clause. I consider this of no importance on this motion. My decision in the instant case is dispositive of the motions to strike in all the other cases. *Page 174